**Charles H. KEATING, Jr., Petitioner,**

v.

**OFFICE OF THRIFT SUPERVISION, Respondent.**

No. 93–70902.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 1, 1994 *.

Decided Jan. 18, 1995.

---

\* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Charles H. Keating, Jr., Scottsdale, AZ, for petitioner.

Richard L. Rennert, Office of Thrift Supervision, Washington, DC, for respondent.

Before: WIGGINS, KOZINSKI, and THOMPSON, Circuit Judges.

WIGGINS, Circuit Judge:

## BACKGROUND

On August 9, 1990, the Office of Thrift Supervision ("OTS") filed a notice of charges against Petitioner Charles Keating, Jr. and other defendants. Subsequently, all defendants but Keating settled the cases against them. Keating's hearing was conducted before Paul Clerman, an Administrative Law Judge ("ALJ") appointed for this proceeding by Timothy Ryan, who was then Director of the OTS. The OTS's final order banned Keating from the federally insured banking industry and directed him to pay $36,398,-738.76 in restitution to Lincoln Savings & Loan in receivership.

Keating appealed to this court, seeking to have the OTS's order vacated and the case remanded for a new hearing. This court has jurisdiction under 12 U.S.C. § 1818(h)(2) to hear the appeal. Keating appeals on three grounds, none of which challenges the substance of the agency's findings and conclusions. First, Keating appeals the ALJ's November 15, 1990 order denying Keating's request to stay the OTS enforcement action pending the resolution of all criminal proceedings against him.[1] Second, Keating alleges error in former OTS Director Timothy Ryan's May 11, 1991, refusal to recuse himself for alleged bias. Third, Keating argues that he was denied due process by Ryan's exercise of combined investigatory, prosecutorial, and adjudicatory functions. We consider each ground for appeal in turn, and we affirm.

## DISCUSSION

### I. REFUSAL TO STAY THE PROCEEDING

Keating claims his due process rights were violated by OTS's refusal to stay the civil proceeding until the conclusion of state and federal criminal proceedings, because (1) he was afforded inadequate preparation time to defend the OTS proceeding, and (2) the pending criminal proceedings forced him to invoke his Fifth Amendment privilege during the OTS hearing, depriving him of an opportunity to testify on his own behalf.

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989); *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Dresser*, 628 F.2d at 1374. "Nevertheless, a court may decide in its discretion to stay civil proceedings ... 'when the interests of justice seem[ ] to require such action.'" *Id.* at 1375 (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 769 n. 27, 25 L.Ed.2d 1 (1970)).

The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. This means the decisionmaker should consider "the extent to which the defendant's fifth amendment rights are implicated." *Id.* In addition, the decisionmaker should generally consider the following fac-

---

1. Keating's motion to reconsider was denied on February 28, 1991.

tors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id.* at 903.

█ Keating contends that the ALJ's refusal to postpone the administrative proceeding left him with inadequate time to mount a defense because the criminal trials demanded all of his attention. Although both the criminal trials and the OTS proceeding involved potentially overwhelming quantities of documentary evidence, the ALJ found that Keating had adequate time to prepare for the OTS hearing. He also concluded that any burden on Keating was far outweighed by the public interest in a speedy resolution of the case. Both conclusions are supported by the record.

The OTS hearing began eleven months after the notice of charges issued. The notice issued on August 9, 1990. The hearing took place in Los Angeles from July 1 to 3 and July 8 to 12, 1991. On July 12 the OTS hearing was suspended for nine months. The state trial began on Aug. 4, 1991, resulting in conviction on Dec. 4, 1991. Keating was then indicted on federal charges on Dec. 12, 1991. On March 24, 1992, two of the four OTS charges were severed because they concerned the transactions on which the federal indictment was based. The OTS hearing on the remaining two charges resumed in Phoenix, Arizona on April 27, 1992. The hearing concluded on May 1, 1992. Keating's federal criminal trial began six months later, on November 2, 1992.

In sum, Keating had eleven months to prepare for the first segment of the administrative hearing. The OTS proceeding was then adjourned for nine months, during which Keating's state trial and sentencing took place.[2] When the hearing resumed, the state trial itself had been over for more than four months. The federal trial did not commence until six months after the completion of the OTS proceeding. The ALJ was therefore justified in finding that Keating had ample time to prepare his defense in the OTS proceeding and that the decision not to stay the hearing did not unduly compromise Keating's due process rights.

█ Keating also contends that the OTS proceeding should have been stayed until after the conclusion of the criminal trials because the pending trials forced him to assert his Fifth Amendment privilege in the OTS proceeding. His argument is unpersuasive.

Keating did not have an opportunity to invoke his Fifth Amendment privilege in the OTS hearing before the hiatus, during which the state trial and federal indictment took place. After the federal indictment, the OTS successfully moved to sever two administrative counts that overlapped with the federal indictment. The OTS claims that the remaining two counts were unrelated to the federal charges. Keating, on the other hand, claims that there was still significant overlap between the subject matter of the remaining administrative counts and the federal criminal trial, which made it necessary to invoke his Fifth Amendment privilege. When the hearing resumed, Keating made an appearance to waive his rights to attend the hearing, to have his attorneys present, to cross-examine witnesses, to testify, to present evidence, or otherwise to defend the proceeding, and he declared that he would assert his Fifth Amendment privilege against self-incrimination in response to any questions by OTS counsel. He did, in fact, assert the privilege when asked about certain transactions.

█ We conclude that any remaining overlap between the OTS and criminal pro-

---

**2.** The judge presiding over Keating's criminal trial in state court had informed Keating that if he asked to postpone commencement of the state trial for three weeks, the judge would allow it. Keating did not make the request. Keating's failure to postpone the state trial is some indication that the pendency of the state trial did not put Keating under so much time pressure that his defense suffered in the OTS proceeding.

ceedings did not make the ALJ's refusal to stay the OTS proceeding an abuse of discretion. A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment, in a civil proceeding. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976).

In deciding whether to proceed with the hearing, the extent to which the defendant's Fifth Amendment rights are implicated is a significant factor for the ALJ to consider, but it is only one consideration to be weighed against others. *Molinaro,* 889 F.2d at 902. The ALJ's discussion of the various considerations was exhaustive, and despite the potential implication of Keating's Fifth Amendment rights, he did not abuse his discretion in deciding that the balance favored proceeding with the hearing.

In contrast to Keating's interests, which were not overly burdened by proceeding with the hearing, the public's interest in a speedy resolution of the controversy and the OTS' concern for efficient administration would have been unnecessarily impaired had the proceeding been stayed. Moreover, in light of the inordinate amount of media attention given to the case, any delay would have been detrimental to public confidence in the enforcement scheme for thrift institutions.

In highly publicized cases, such as the one at hand, judicial and quasi-judicial decision-makers need to be especially careful that undue consideration is not given a proceeding's impact on the public. Governmental entities are frequently aware of the need to reassure the public that they are taking prompt action in response to a crisis. In such high visibility situations, it is especially necessary to guard the rights of defendants, and concern for the public deterrence value of an enforcement proceeding must not be allowed to override the individual defendant's

due process rights. However, in light of the finding that Keating had sufficient preparation time, we are confident that Keating's due process rights were adequately protected, and it was not an abuse of discretion for the ALJ to decide that the public interest required the hearing to be held sooner rather than later.

## II. DIRECTOR RYAN'S REFUSAL TO RECUSE HIMSELF

■ Keating claims he was denied due process by the failure of Ryan, who was Director of the OTS during much of the proceeding, to recuse himself from the case. Keating points to several statements reportedly made by Ryan to the press as indications that Ryan had prejudged the facts of the case or, alternatively, that Ryan had talked himself into a corner such that it would be embarrassing for him to render a decision in Keating's favor. Keating also contends that Ryan had a grudge against Keating because Keating testified before the Senate Banking Committee in opposition to Ryan's confirmation as Director of OTS.

Keating first raised his claim of bias in a March 25, 1991, reply to the OTS's Motion for Determination by the Director as to Proper Authority to Rule on Motions to Dismiss. Keating requested Ryan's recusal because of "the extensive public statements made by [Ryan] regarding Mr. Keating, his family, his management of ACC and the management of Lincoln [Savings and Loan]." Keating did not submit to the agency an affidavit laying out the basis for his request for recusal or substantiating his allegation of bias, and his failure to do so is fatal to his claim.

■ Although the OTS points to no case or statute specifically stating that an affidavit must be filed with a request for recusal of an agency head, such a requirement may be inferred from other law. Section 556(b) of the Administrative Procedure Act requires that a "timely and sufficient affidavit" accompany requests for disqualification of presid-

ing employees.[3] The procedure for recusal of district court judges likewise includes a requirement that a "timely and sufficient" affidavit be filed. 28 U.S.C. § 144.

 The procedure for recusal of agency employees and district court judges reflects an underlying policy that a decisionmaker asked to recuse himself or herself should be presented with the basis for the request. The affidavit requirement forces the movant to assemble and substantiate the specific grounds for recusal. The recusal request, with supporting affidavits, must be timely so that the party cannot wait to see the result of the proceeding before substantiating his or her allegations of bias. *See Marcus v. Director, Office of Workers' Compensation Programs*, 548 F.2d 1044, 1050–51 (D.C.Cir.1976). The same considerations apply to the recusal of an agency head.

Keating was aware of the grounds for recusal at the time of his request,[4] yet he failed to accompany his request with a timely and sufficient affidavit stating the grounds for recusal. The affidavit requirement would be gutted if this court reversed simply because, on appeal, the appellant makes allegations that would have been sufficient to require recusal if they had been properly presented to the agency. We decline to follow that path. As the Fifth Circuit has pointed out:

> The requirement of affidavits [for recusal motions] ... is not an empty formality to be cast aside unilaterally by a party to a[n administrative] proceeding. There are many reasons for such a requirement. An affidavit provides an exact, sworn recitation of facts, collected in one place.... [T]he affidavit requirement serves not only to focus the facts underlying the charge, but to foster an atmosphere of solemnity commensurate with the gravity of the claim. [The] failure to submit affidavits is

thus an independently sufficient basis to deny [the] petitions in this respect.

*Gibson v. Federal Trade Comm'n*, 682 F.2d 554, 565 (5th Cir.1982) (quoting the decision of the Federal Trade Commission). Accordingly, when faced with an allegation of bias accompanied by no showing of proof, Ryan was not obligated to recuse himself from the case.

This case presents no special considerations that would justify waiving the affidavit requirement. Ryan's public statements quoted in Keating's appellate brief are very disturbing in light of the fact that, at the time they were made, Ryan had final authority over Keating's case. However, we are reassured by the fact that Ryan ultimately did not have a significant role in the outcome. Ryan's adjudicative role was limited to issuing the original and amended notice of charges, the temporary cease-and-desist order, and an order denying Keating's motion to dismiss. The hearing itself was conducted by an ALJ. Ryan resigned from the OTS in December 1992, seven months after the conclusion of the hearing and approximately three months before the ALJ issued his Recommended Decision on March 16, 1993. Ryan's successor, Acting Director Jonathan Fiechter, issued the final order. The order, dated October 22, 1993, adopted the ALJ's recommendation. In light of the minor role that Ryan actually played, we are confident that enforcing the affidavit requirement will not result in injustice.

## III. COMBINATION OF FUNCTIONS

Keating raises, in passing, a final contention: that Director Ryan exercised an impermissible combination of investigatory, prosecutorial, and adjudicatory functions. However, the OTS hearing appears to have been a regularly conducted administrative proceed-

---

3. Section 556(b) states:

> The functions of presiding employees and of employees participating in decisions in accordance with section 557 of this title shall be conducted in an impartial manner. A presiding or participating employee may at any time disqualify himself. On the filing in good faith of a timely and sufficient affidavit of personal bias or other disqualification of a presiding or participating employee, the agency shall deter-

> mine the matter as a part of the record and decision of the case.

5 U.S.C. § 556(b). The definition of "employee," however, does not include the agency head. *See* 5 U.S.C. § 2105(a).

4. All but one of the offending statements were made before Keating's request for recusal, and all of them were made before the OTS rendered a final decision.

ing, in which the ALJ presided over the taking of evidence, the ALJ issued a recommended decision with findings of fact and conclusions of law, and the agency head, Acting Director Fiechter, issued a final decision. No impermissible mixing of functions has been shown. *See In re Seidman,* 37 F.3d 911, 924–26 (3d Cir.1994).

## CONCLUSIONS

All three of Keating's arguments on appeal fail. First, failure to stay the administrative proceeding pending the outcome of state and federal criminal trials was not an abuse of the ALJ's discretion. On the recusal issue, the OTS escapes reversal because of Keating's procedural error and because Ryan's actual role was not significant. Finally, the OTS proceeding did not impermissibly combine investigatory, prosecutorial, and adjudicatory functions. The final order of the OTS is therefore AFFIRMED.