**Kevin L. HARRIS, Plaintiff,**

v.

**UNITED STATES of America, et. al., Defendants.**

**Civ. No. 94–0359–S–BLW.**

United States District Court, D. Idaho.

Dec. 21, 1995.

---

David Z. Nevin, Boise, ID, Ellison M. Matthews, Boise, ID, for Kevin L. Harris.

Charles S. Leeper, Karl N. Metzner, Spriggs & Hollingsworth, Washington, DC, for Arthur Roderick, Larry Cooper, Jose Antonio "Tony" Perez, Henry Hudson.

Michael L. Martinez, Edward V. Hickey, Holland & Knight, Washington, DC, for G. Wayne "Duke" Smith.

Brendan V. Sullivan, Jr., Glenn J. Pfadenhauer, Kathleen H. Quimby, Williams & Connolly, Washington, DC, for Richard Rogers, Steve McGavin, Les Hazen, Dale Carnege, William D. Gore, Eugene F. Glenn.

Dan K. Webb, Howard M. Pearl, Winston & Strawn, Chicago, IL, for Larry Potts.

Earl J. Silbert, Adam S. Hoffinger, Jeffrey D. Clark, Schwalb Donnenfeld Bray & Silbert, Washington, DC, for Lon T. Horiuchi.

D. Marc Haws, Asst. U.S. Atty., Boise, ID, Rupert Mitsch, U.S. Dept. of Justice, Civil Division, Washington, DC, for defendant.

## MEMORANDUM DECISION AND ORDER

WINMILL, District Judge.

### INTRODUCTION

The Court has before it the Government's Motion to Stay (Docket No. 24). The Court heard oral argument on December 11, 1995, and the Motion is now at issue. The Court will summarize the facts and litigation history of this matter, and will then turn to the Motion itself.

## BACKGROUND

The Plaintiff Kevin Harris brought this action against the United States and thirteen individual agents and officials with the FBI and the United States Marshal's Service. Harris seeks damages for, among other things, injuries he received when he was shot by an FBI sniper during the siege at Ruby Ridge.

Harris was charged with seven criminal offenses for his conduct on Ruby Ridge, including a charge of First Degree Murder for the killing of Marshal William Degan. Following a trial, Harris was acquitted of all charges. The trial's aftermath includes numerous investigations of the conduct of the FBI and Marshal's Service, and a Senate hearing where some of the Defendants testified.

After Harris filed this civil action, the Court established a schedule for Defendants to raise their qualified immunity defenses by filing Motions to Dismiss. In doing so, the Court was following the admonition of the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), that qualified immunity issues should be resolved early in the case before extensive discovery begins. But before the Motions to Dismiss were filed, the Government filed its Motion to Stay. The Court put the Motions to Dismiss on hold so that the Motion to Stay could be resolved.

The Government seeks a stay of at least six months on the ground that discovery in this civil action could compromise a criminal investigation conducted by the U.S. Attorney's Office for the District of Columbia (hereinafter USAO–DC) into the conduct of many of the individual Defendants. The Government assets that the prejudice could take at least three forms:

1) The production to potential targets during civil discovery of critical documents whose substance directly relates to specific allegations of illegal conduct currently under criminal investigation. These documents will hereinafter be referred to as the confidential documents.

2) The release of documents which contain compelled statements of federal employees will imperil the USAO–DC's attempt to demonstrate at any potential *Kastigar* hearing that its witnesses have not relied upon information contained in such statements; and

3) the broad scope of discovery permitted by the Federal Rules of Civil Procedure will permit potential targets of the criminal investigation to obtain information, including the taking of depositions, which they otherwise would not be entitled to receive under the more restrictive Federal Rules of Criminal Procedure.

*See,* Declaration of Michael Stiles, ¶ 3, 4 (Docket No. 25).

The Ninth Circuit has addressed the issue of whether civil actions should be stayed pending parallel criminal proceedings. In *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir.1995), the Circuit held that

[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence. Nevertheless, a court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.

The Circuit went on in *Keating* to list five factors for the court to consider in determining whether a stay of the civil action would be appropriate:

(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 325.

The first factor is, in the Court's analysis, a crucial one. Long delays in civil litigation

have been a pernicious and escalating problem in Federal Courts across the nation, and in this District in particular. Until just recently, civil litigants in this District endured lengthy waits for trial dates due to a judicial vacancy that went unfilled for almost three years. This Court is committed to providing civil litigants with expeditious justice. Harris will certainly be prejudiced by the stay, especially since it is clear to the Court that the stay would last well in excess of the initial six month period sought by the Government. As the Government's counsel conceded candidly at oral argument, the criminal investigation and prosecution will last far longer than six months.

The fifth factor is also important here. The Court recognizes that the Government's criminal case could be prejudiced if certain material was widely disseminated. For example, the Government's counsel represented at oral argument that there are about 134 "compelled" statements taken of 66 individual federal employees during investigations into the Ruby Ridge incident. Statements made by a public employee, whose refusal to speak is punishable by removal from office, may not be used against that employee in criminal proceedings. *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The compelled statement is treated as having been given under a grant of use immunity pursuant to 18 U.S.C. § 6002. *United States v. Friedrick,* 842 F.2d 382, 385 (D.C.Cir.1988). The Government is prohibited from making either direct or indirect evidentiary use of a defendant's immunized testimony. *United States v. North,* 910 F.2d 843, 860–63, *reh'g granted in part,* 920 F.2d 940 (D.C.Cir.1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). The District of Columbia Circuit Court has held that indirect evidentiary use may include testimony of a witness whose recollection was refreshed by exposure to the immunized testimony of the defendant. *Id.* at 860–63.

If the Government does ultimately indict any of the individual Defendants in this case on criminal charges, the Government would have to prove—prior to trial—that it was not making any direct or indirect use of the

"compelled" statements. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). If the "compelled" statements are widely disseminated, it will be very difficult for the Government to persuade any Court following *North* that the statements are not at least being used indirectly.

In addition, the USAO–DC has confidential documents which would reveal to a potential defendant the direction of the investigation. These documents must be kept from any targets of the criminal investigation.

The Government's interest in maintaining the integrity of its criminal prosecution is substantial. But that interest can be protected by measures short of a complete stay of the civil litigation. At oral argument, counsel all agreed that no discovery would proceed until the Motions to Dismiss on qualified immunity grounds were resolved. The Government's counsel agreed at oral argument that the Government would suffer no prejudice if the Motions to Dismiss proceeded without discovery.

If the Motions to Dismiss are resolved in Plaintiff's favor, the issue will then arise in full force. The Government has identified documents which it did not produce to the Senate during the hearings on Ruby Ridge because the documents were either confidential or were "compelled" statements. At this point, the Court sees a distinction between the "compelled" statements and the confidential documents. The Government has not shown any reason why the Defendants should be denied access to the "compelled" statements so long as the Defendants do not disseminate them to others. A protective order agreed to by all parties would keep the documents within a narrow circle, thereby avoiding any *North* problems. This is quite common in business litigation where trade secrets are involved.

But a protective order would not protect the Government's interests with regard to the confidential documents. Those documents may have to be kept from Defendants altogether. The Government has offered to provide those documents to the Court for an in camera inspection. The Court agrees that the best way to handle the confidential documents would be to have a United States

Magistrate Judge examine the Government's documents and determine which items, if any, are discoverable. That process could get underway after the Motions to Dismiss are resolved.

In addition, Defendants' counsel indicated at oral argument that when discovery goes forward, they will be moving for a protective order with regard to instances where some Defendants took the Fifth Amendment. The Court can take that matter up when it arises.

■ Because the Plaintiff's interest in an expeditious resolution of his civil dispute is so important, and because the Government's important interests can be protected by means less onerous than a total stay, the Court will refuse to stay the entire case but will grant a limited Stay Order. The Stay shall only apply to those confidential documents and "compelled" statements that the Government did not reveal to the Senate.

In addition to limiting the Stay to only certain types of documents, the Court will also limit the Stay's duration. If the Defendants' Motions to Dismiss are denied, counsel shall, within thirty (30) days, file with the Court an agreed-upon proposed Protective Order covering the "compelled" statements. Once the Protective Order has been approved by this Court, the Court will lift the Stay as to any "compelled statements."

That will leave a Stay that applies only to confidential documents, and the Court will require the Government to submit these confidential documents to the United States Magistrate Mikel H. Williams within forty-five (45) days from the date the Motions to Dismiss are denied. The Magistrate will then determine which documents designated as confidential are discoverable, if any. The Court will then review the decision of the Magistrate and decide if the Stay, which by then will only apply to confidential documents, should be continued, modified, or lifted.

As one Defense Counsel stated at oral argument, the most substantive discovery tool is a deposition, and the Court recognizes that it is impossible to take an effective deposition without all the related documents. There will be an unavoidable delay from the time the Motions to Dismiss are resolved until the time all discoverable documents are available. But this delay should not be lengthy. And it appears that the protected documents are not a large percentage of the document universe, so that some depositions could proceed.

There were certain other agreements reached during the oral argument on other matters that the Court will put into the Order set forth below.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED, that the Government's Motion to Stay (Docket No. 24) be, and the same is hereby, GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED, that discovery shall be STAYED only as to those documents which the Government did not reveal to the Senate during hearings on Ruby Ridge, and which include specifically (1) confidential documents that would reveal necessarily secret aspects of the criminal investigation; and (2) "compelled" statements of federal employees. In all other respects, the Motion to Stay shall be DENIED.

IT IS FURTHER ORDERED, that if the Motions to Dismiss are denied, counsel shall, within thirty (30) days, file with the Court an agreed-upon proposed Protective Order that will govern discovery of the "compelled" statements. Any Stay concerning "compelled" statements shall be lifted upon the approval by this Court of the Protective Order.

IT IS FURTHER ORDERED, that Government's counsel shall, within forty-five (45) days from the date the Motions to Dismiss have been denied, file with United States Magistrate Mikel H. Williams the confidential documents that were not presented to the Senate during the Ruby Ridge hearings, and any subsequent confidential documents the Government contends are not discoverable. By this Order, all discovery matters are hereby referred to Magistrate Williams. After receiving the Government's documents, the Magistrate shall thereafter issue a decision concerning the discoverability of those

documents. After reviewing that decision, the Court will then determine whether the Stay should be continued, modified, or lifted.

IT IS FURTHER ORDERED, that the Defendants shall file their Motions to Dismiss with supporting briefing on or before December 29, 1995; the Plaintiff shall file his Response Brief on or before January 12, 1996; and the Defendants shall file their final Reply Brief on or before January 26, 1996. Oral argument on the Motions to Dismiss shall be set for February 26, 1996 at 9:00 am in the Federal Courthouse in Boise, Idaho.

IT IS FURTHER ORDERED, that pursuant to agreement of all counsel at the oral argument, the Defendants shall answer or otherwise plead to the Plaintiff's common law tort claims on or before June 28, 1996.