**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| DEL ROSA VILLA,<br><br>          Petitioner,<br><br>   v.<br><br>KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services,<br><br>          Respondent. | No. 12-71685<br><br>HHS No. A-12-22<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Department of Health & Human Services

Argued and Submitted October 11, 2013
Pasadena, California

Before: KLEINFELD and CHRISTEN, Circuit Judges, and SEDWICK, District Judge.[***]

   On April 21, 2009, a man known in this case as "Resident 1" attempted to

commit suicide by jumping in front of a car. He was taken to Arrowhead hospital

---

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

   [***]   The Honorable John W. Sedwick, District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

where he was voluntarily committed. Arrowhead treated his broken leg as well as his psychiatric problems. On May 8, 2009, an Arrowhead physician evaluated Resident 1 as "unpredictable with intermittent thoughts of suicide" and concluded that he was "at risk of harming himself if he were discharged to the community." Arrowhead continued to regularly evaluate him, and on May 13, 2009, a different psychiatrist concluded that he was stable and ready to be discharged to a skilled nursing facility.

On May 22, 2009, Arrowhead discharged Resident 1 to the care of Del Rosa Villa nursing facility. Eight days later, on May 30, 2009, a psychiatrist evaluated Resident 1 and found him stable, while noting that he was "positive" for hallucinations and delusions. On June 1, 2009, Nurse T.Y., a member of Resident 1's multi-disciplinary team, assembled his "care plan" and wrote an intervention for "suicide watch all times" in red ink on his plan. On June 5, 2009, the multi-disciplinary team met but made no changes to Resident 1's care plan.

That same day, Resident 1 began "bouncing" intensively. The nursing staff notified his doctor, who prescribed the sedative Ativan. When Resident 1 did not stop "bouncing," the doctor increased his Ativan dosage and instructed the Del

Rosa Villa staff to send Resident 1 to the Emergency Room if things did not improve. The next day, June 6, 2009, the nursing staff sent Resident 1 to the emergency room at St. Bernadine Medical Center. St. Bernadine discharged him the next day, June 7, 2009, after he had calmed down. On June 9, 2009, Resident 1's sister reported to Del Rosa Villa's staff that her brother had told her that he had a "homosexual microchip" in his head. The nursing staff checked on him, but he seemed calm and denied making the statement.

The next day, June 10, 2009, the Resident's team met and decided to have Resident 1's doctor evaluate him. Resident 1's psychiatrist increased his anti-psychotic medicine dosage. At 8:30 p.m. that night, the nursing staff administered Ativan due to Resident 1's anxiety and bouncing. At 11:20 p.m., he had "bounced" so intensely that despite his broken leg he managed to "bounce" out of his wheelchair and crash onto the floor. After finding him on the floor, the nursing staff called his doctor, who did not answer. They tried calling him again one hour later at 12:15 a.m. At 12:30 a.m., Resident 1 went outside through the laundry room (the nursing staff thought he was going to smoke). At 12:50 a.m., he was found hanging by his belt on the parking lot fence and died soon after.

The Centers for Medicare and Medicaid Services state surveyors conducted an unannounced survey after Del Rosa Villa's self-report of the patient's suicide. They cited Del Rosa Villa under 42 C.F.R. 483.25(h)(2) for failure to adequately supervise Resident 1 and imposed a $10,000 per instance fine. Del Rosa Villa requested a hearing in front of an administrative law judge, who upheld the citation and the fine. Del Rosa Villa appealed to the Department of Health and Human Services's Departmental Appeals Board, which upheld the ALJ decision. Del Rosa Villa now seeks review of the Appeals Board decision in this Court, arguing that it is not supported by substantial evidence. We deny the petition.

42 U.S.C. § 1320a-7a(e) provides that "[a]ny person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the United States Court of Appeals for the circuit in which the person resides[.]" We review the Secretary's decision for substantial evidence. See id. ("The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.").

The Secretary's opinion relies on three independent grounds. First, Resident 1's care plan required some form of heightened monitoring, which Del Rosa Villa

4

failed to implement, and of which several staff members responsible for the Resident's supervision were apparently unaware. Second, Del Rosa Villa failed to properly respond to Resident 1's deteriorating condition by increasing supervision. And third, on the night of the suicide, Resident 1's "bouncing" behavior created a foreseeable risk that he could be injured if allowed to leave the facility unsupervised, regardless of his risk of suicide or the contents of his care plan. Because we find that the third ground, by itself, is supported by substantial evidence, we need not address the parties' arguments regarding the other grounds.

42 C.F.R. 483.25(h)(2) provides that a Medicare-participating nursing facility "must ensure that . . . [e]ach resident receives adequate supervision and assistance devices to prevent accidents." In this case, the staff of Del Rosa Villa found Resident 1 on the floor after he had "bounced" himself out of his wheelchair, broken leg and all. Just one and a half hours later, the Del Rosa Villa staff allowed Resident 1 to go outside for a smoke unsupervised. It was reasonably foreseeable that some accident could have occurred, whether it may have been him "bouncing" himself out of his wheelchair again—albeit this time on hard pavement—or something else. That is all that is required for a facility to violate the regulation. Thus, substantial evidence supports the Secretary's decision.

5

Del Rosa Villa also argues that it was prejudiced by the Centers for Medicare and Medicaid Services's withholding of some Arrowhead hospital records. This allegation is allegedly supported by a deposition not in the record. Moreover, the new hospital records only implicated the grounds not addressed in this disposition. Because substantial evidence supports the Secretary on the ground discussed above, we need not address this issue.

Finally, Del Rosa Villa argues that the administrative law judge abused his discretion by refusing to grant its request for a second continuance due to a pending grand jury investigation. "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotation marks omitted). There is no evidence of substantial prejudice here, so this argument is without merit.

The petition is **DENIED**.

*Del Rosa Villa v. Sebelius*, No. 12-71685

CHRISTEN, Circuit Judge, concurring.


I would uphold the penalty on all of three of the grounds relied upon by the

Departmental Appeals Board.  Therefore, I agree that the failure to supervise the

resident on the night of his suicide supports the violation found here.