# Supreme Court of Kentucky

2020-SC-0088-MR

EUNICE BARNES                                                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                                NO. 2019-CA-1452
FAYETTE CIRCUIT COURT NO. 19-CI-00204

HONORABLE JULIE GOODMAN, JUDGE,                                    APPELLEE
FAYETTE CIRCUIT COURT, DIVISION 4,
FORMERLY HONORABLE JOHN
REYNOLDS

AND

KELLIE CHRISTIAN, INDIVIDUALLY AND            REAL PARTIES IN INTEREST
AS ADMINISTRATRIX OF THE ESTATE,
OF VONDA MOLLETT; DENVER MOLLETT;
SAMANTHA MOLLETT; BE-LINDA POE;
AND SAM WALLER

## ORDER GRANTING PETITION FOR MODIFICATION

Appellant's Petition for Modification of the Court's Opinion rendered

March 25, 2021 is GRANTED.  Justice Keller has also modified her Concurring

Opinion accordingly.  The attached modified Opinion of the Court is hereby

ORDERED SUBSTITUTED for the Opinion originally rendered.  This

modification does not affect the holding of the original Opinion.

All sitting.  All concur.

ENTERED: June 17, 2021.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

2020-SC-0088-MR

EUNICE BARNES                                       APPELLANT

|  | ON REVIEW FROM COURT OF APPEALS | |
|---|---|---|
| V. | NO. 2019-CA-001452-OA | |
|  | FAYETTE CIRCUIT COURT NO. 19-CI-00204 | |

HONORABLE JULIE GOODMAN, JUDGE,              APPELLEE
FAYETTE CIRCUIT COURT, DIVISION 4,
FORMERLY HONORABLE JOHN
REYNOLDS

AND

KELLIE CHRISTIAN, INDIVIDUALLY AND      REAL PARTIES IN INTEREST
AS ADMINISTRATRIX OF THE ESTATE
OF VONDA MOLLETT; DENVER MOLLETT;
SAMANTHA MOLLETT; BE-LINDA POE;
AND SAM WALLER

## OPINION OF THE COURT BY JUSTICE NICKELL

## <u>AFFIRMING</u>

Eunice Barnes petitions this Court for a writ of prohibition and/or

mandamus[1] directing the Fayette Circuit Court to vacate denial of her motion

to stay discovery in a wrongful death/negligence action naming her, her former

---

[1] The same standard applies whether reviewing a petition for a writ of prohibition or mandamus.  *Mahoney v. McDonald-Burkman*, 320 S.W.3d 75, 77 (Ky. 2010).

employer, and others as defendants until completion of a parallel criminal case against her alone.[2] Barnes seeks to stay all civil discovery until her indictment is resolved so she may freely exercise her constitutional right to remain silent. In this matter of right appeal, we affirm the Kentucky Court of Appeals which found Barnes failed to demonstrate the "great and irreparable injury" required for issuance of a writ under *Lehmann v. Gibson*, 482 S.W.3d 375, 385 (Ky. 2016), and further found the circuit court properly exercised its discretion in refusing to stay civil discovery. Holding Barnes is not entitled to the requested writ, we deny the petition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Suffering from end-stage Alzheimer's disease and dementia, 76-year-old Vonda Mollett was admitted as a patient to The Ridge Behavioral Health System (Ridge), a licensed psychiatric hospital in Lexington, Kentucky, where Barnes was employed as a mental health technician.

On September 21, 2018, Allison Keeney, also employed as a Ridge mental health technician, was sitting at Mollett's bedside when Mollett soiled her clothing and bed linens. Keeney called for assistance and Barnes responded to Mollett's room. Citing a Ridge-recorded video of the encounter, the Family alleges Barnes repeatedly struck Mollett "in and about the face,

---

[2] Vonda Mollett's Family (Family), plaintiff in the circuit court civil case, filed a brief in this appeal as a real party in interest. Although prosecuting Barnes in the parallel criminal case, the Commonwealth is not a party to this appeal.

head, and body while Ms. Mollett was helpless and defenseless in her room at the Ridge."

Three days after the encounter, Mollett was admitted to Baptist Health Hospital. Two days later, Keeney reported the encounter to Ridge which alerted Adult Protective Services and an agency investigation was launched. About three weeks later, Mollett died at home from complications of Alzheimer's dementia. The Family attributes her death to the encounter with Barnes and alleges Ridge did not accurately convey Mollett's true condition to Baptist Health when transferring her to its care.

In January 2019, the Family filed a civil complaint[3] against several defendants including Barnes; Keeney; Ridge, its corporate affiliates, and Eisner, its Administrator, alleging medical negligence, negligent hiring, negligent supervision and other torts. In the complaint, the Family specifically alleges, "Ridge Defendants and Nina Eisner destroyed video of Ms. Mollett including portions of the video of the Attack and all video of Ms. Mollett prior to and following the Attack."

---

[3] Fayette Circuit Court Case No. 19-CI-00204. In the civil suit, Ridge is charged with two counts of negligence/wrongful death; one count of gross negligence/wrongful death; and, violating the Kentucky Consumer Protection Act. Nina Eisner is charged with negligence/wrongful death and gross negligence. Ridge and Eisner are jointly charged with negligent hiring and/or supervision, and negligently retaining Barnes. The Family seeks to hold Ridge and its affiliates vicariously liable for Mollett's death under theories of master/servant, respondeat superior and agency. Barnes, Keeney and "unknown defendants" are charged with medical negligence/wrongful death; negligence/wrongful death; and gross negligence/wrongful death. All defendants are charged with civil battery. Seeking punitive damages, the Family also alleges loss of consortium and intentional/negligent infliction of emotional distress.

3

Based on the same encounter, on March 6, 2019, Barnes was charged[4] with knowingly abusing or neglecting an adult, a Class C felony under Kentucky Revised Statutes (KRS) 209.990(2). Shortly after the indictment was filed, the Family moved the trial court to compel Barnes to submit to a deposition in the civil suit and served her with contention interrogatories[5] to learn the basis of affirmative defenses she pled in answering the complaint.

On March 20, 2019, a special judge signed an order denying both the Family's motion to compel, and a defense motion filed by Ridge, its corporate affiliates, Eisner and Barnes—all of whom were represented by the same law firm—requesting a stay of civil discovery until Barnes' criminal case was resolved. Due to a conflict of interest, Barnes now has separate counsel from other civil defendants. On joining the civil case, Barnes' new attorney renewed—in Barnes' name alone—the original motion to stay civil discovery. Different attorneys represent Barnes in the criminal and civil litigation.

Both cases are assigned to Division Four with Judge Julie M. Goodman[6] presiding. The criminal case was scheduled for trial on April 6-7, 2020, as

---

[4] Fayette Circuit Case No. 19-CR-00342.

[5] General discussion of contention interrogatories may be found at: Adrian P. Schoone and Edward L. Miner *The Effective Use of Written Interrogatories*, 60 Marq. L. Rev. 29, 44-55 (1976). *See also*, *Percell v. Ky. Dep't of Mil. Affs.*, 3:16-CV-00721-RGJ-LLK, 2018 WL 4677783, at *2 (W.D. Ky. Sept. 28, 2018); *Thomas & Betts Corp. v. Panduit Corp.*, 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996)(contention interrogatories usually propounded near end of discovery); and, *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D. Kan. 1991) (interrogatory may inquire into party's contentions and factual basis).

[6] When stays were denied on September 24, 2019, and October 4, 2019, Judge John Reynolds was presiding over both cases. Judge Goodman has since succeeded him on the bench.

4

"second status,"[7] but still has not occurred. A status hearing scheduled for January 28, 2021, was replaced by a conference call between the court, the Commonwealth, and Barnes' criminal defense lawyer. According to updates provided to this Court by Judge Goodman and Barnes[8], the defense has received a copy of a video recording; no plea offer has been made; both parties believe the criminal case will be tried; most evidence in the criminal case has been obtained; and, the parties are awaiting documents from the Office of the Inspector General.

The criminal case will not be reviewed again until April 29, 2021, when a new trial date may be scheduled. However, Barnes is not in custody, nor has she filed a speedy trial motion. As a result, her criminal case will not receive scheduling priority for a new trial date under current COVID-19 protocols. According to Judge Goodman, the criminal trial cannot realistically occur until late 2021 or early 2022.

The Family maintains it has not attempted to depose Barnes since her first motion for a stay was denied in March of 2019. Nor has it asked Barnes to produce documents. The Family states it has served Barnes only contention interrogatories it does not expect her to answer until the criminal case is closed and civil discovery concludes. While the Family claims it will *not* seek

---

[7] Barnes' case would have been called only as a substitute for another case.

[8] By order entered January 26, 2021, this Court requested the parties and the trial court provide a status update as to the criminal case.

5

information *from Barnes* until her criminal case ends, it wants to move forward with discovery from *other* civil defendants who in apparent solidarity with Barnes refuse to cooperate, creating a stalemate[9] despite denial of all formal requests to stay civil discovery.

In a two-sentence order, the trial court denied Barnes' second motion for a stay on September 24, 2019, prompting Barnes to file an original action in the Court of Appeals under Kentucky Rules of Civil Procedure (CR) 76.36 for a writ of prohibition and/or mandamus to stay civil discovery. Because the order contained no analysis of seven factors[10] identified in *Lehmann* to weigh when considering a writ in the context of parallel litigation, Barnes also sought intermediate relief under CR 76.36(4). The Court of Appeals abated both the

---

[9] Ridge, its corporate affiliates, and Eisner gave their view of civil discovery in a response filed in the Court of Appeals on February 4, 2020. They state, "they have responded to numerous sets of interrogatories and requests for production, supplemented their written discovery responses on multiple occasions, and presented" four employees—including Keeney and Eisner—for depositions in this "relatively simple case based on an incident that was captured on video, not a scientifically complicated case that requires extensive investigation." While not party to Barnes' request for a temporary stay of civil discovery, they support her efforts. Not having the complete circuit court record, we cannot confirm the true state of civil discovery.

[10] (1) [T]he extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [(5)] the interests of persons that are not parties to the litigation; [(6)] court convenience; and [(7)] the public interest in the pending civil and criminal actions.

*Lehmann*, 482 S.W.3d at 384. Although not an itemized factor, length of desired stay is to be weighed when evaluating "prejudice to the party opposing the stay." *Id.* at n. 26 (quoting *State v. Deal*, 740 N.W.2d 755, 766 (Minn. 2007)). *Maze v. Kentucky Judicial Conduct Commission,* 575 S.W.3d 204, 210 (Ky. 2019), lists more items to consider in "balancing hardships," such as whether the defendant's Fifth Amendment rights are implicated, and the best use of judicial time and resources. Finally, any stay must be of limited, specified duration and not "place [the] case in limbo for years." *SEC v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016).

original action and the request for intermediate relief and remanded the matter to the trial court for entry of a supplemental order consistent with *Lehmann.*

The trial court entered a new order on October 4, 2019, again denying the stay, and finding none of the seven *Lehmann* factors supported staying civil discovery. First, it found little overlap between the civil and criminal cases. Barnes is the lone criminal defendant and most of the 22 civil claims take corporate defendants to task for failing to: supervise Barnes and Keeney; adopt employee guidelines, policies and procedures; report the true extent of Mollett's injuries; and, falsifying patient records. Second, Barnes' criminal trial was set for April 6-7, 2020, but, as a "second status" case, there was no guarantee it would go forward as scheduled, and if not called on April 6, could be delayed until 2021. Third, being under indictment, Barnes has an interest in staying civil discovery to protect her Fifth Amendment right not to self-incriminate, but her co-defendants have no such interest,[11] and the Family has a compelling right to collect proof before it grows stale or disappears. Fourth, Barnes is the only civil defendant who could be prejudiced by denial of a stay, but the Family will experience growing prejudice if a stay is granted. Fifth, unindicted entities named in a complaint as "unknown defendants" or "Jane Doe" are rarely sufficient reason to grant a stay.[12] Moreover, the public has an interest in

---

[11] Three civil defendants are corporate entities with no Fifth Amendment right. "The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals." *United States v. White*, 322 U.S. 694, 698 (1944).

[12] *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). Barnes maintains she did not make this argument.

7

knowing whether Ridge, its affiliates and employees are engaging in wrongful conduct adversely affecting patients. Sixth, with one judge presiding over both cases the court will not be inconvenienced by simultaneous litigation. Instead, the court will be well-positioned to quickly identify and address issues. And seventh, the public has an interest in ensuring vulnerable loved ones currently residing at Ridge receive proper care. In the final paragraph before denying the stay, the trial court wrote:

> Ms. Barnes can easily be protected with an individual protective order instead of staying the entire litigation. A full stay of the proceeding would prejudice the [Family] when all other Defendants need no protection from a stay.

Court of Appeals Judge Sara Combs entered an order denying Barnes' motion for intermediate relief on October 11, 2019. She determined the order entered by the trial court on October 4, 2019,[13] accurately reflected the trial court's view and, because no deposition was to occur in the immediate future, Barnes would not suffer great and irreparable harm before a three-judge panel considered her petition.

In addressing Barnes' concerns about being forced to choose between waiving or invoking her Fifth Amendment right against self-incrimination, Judge Combs noted exercising one's Fifth Amendment privilege is not without cost, *McKune v. Lile*, 536 U.S. 24, 41 (2002), and the Constitution does not "forbid requiring h[er] to choose." *McGautha v. California*, 402 U.S. 183, 213

---

[13] Different orders were entered on October 4, and October 7, 2019, prompting Barnes to question which controlled. It was determined the earlier order controls.

8

(1971) (vacated on other grounds by *Crampton v. Ohio*, 408 U.S. 941 (1972)). The order further noted Barnes' dilemma is not unusual. Parallel civil and criminal cases are permitted and may proceed simultaneously or sequentially. *SEC v. Dresser Indus. Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980). Moreover, defendants who are facing a single trial must also choose whether, when and how to exercise their Fifth Amendment right.

## II. COURT OF APPEALS OPINION

The appellate panel denied Barnes' petition because she failed to make the two-part showing mandated by *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). While Barnes showed no appeal would cure a discovery blunder—because once revealed information cannot be retrieved, *Bender v. Eaton*, 343 S.W.2d 799, 802 (Ky. App. 1961)—she did not establish allowing civil discovery to proceed would cause her "great and irreparable harm" because she may still "invoke her Fifth Amendment privilege in both the criminal and civil actions." That finding is wholly consistent with *Maze*, wherein a circuit judge with a misconduct charge pending before the Judicial Conduct Commission (JCC) sought to postpone JCC proceedings—due in part to concerns about invoking her Fifth Amendment privilege—until a subsequent indictment was resolved. In affirming the JCC's refusal to stay its proceedings, we wrote in part, "Judge Maze remains free to assert her Fifth Amendment right in both her JCC and criminal proceedings." 575 S.W.3d at 213.

Finding the trial court's denial of Barnes' motion for a stay was neither "arbitrary, unreasonable, unfair, [n]or unsupported by sound legal principles,"

9

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999), the panel determined there had been no abuse of discretion, specifically noting denying the writ was within the range of permitted rulings following a correct application of the law to the facts. *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004). That finding mirrors *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.), which states, "[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings," and whether to stay civil discovery should only follow consideration of all circumstances and competing interests, of which a defendant's Fifth Amendment right to remain silent is but one factor. *Id.* at 326.

Next, finding *Lehmann* to be factually distinct—because Barnes is not alleged to be attempting to circumvent the limits of criminal discovery and use broader civil discovery to her advantage—the panel determined the trial court did not err in denying the requested stay. Lehmann, a former pastor under indictment for sex crimes against children, was denied the writ he sought to reverse a trial court's grant of Commonwealth motions to intervene in a subsequently filed civil case brought by the sex abuse victims against Lehmann and religious groups with whom he was affiliated. We held staying civil discovery until Lehmann's criminal case was final was appropriate to protect "the integrity of the criminal proceeding[,]" *Lehmann*, 482 S.W.3d at 384, and in particular, to prevent Lehmann from using the more liberal civil rules to access proof—specifically victim depositions—which would be unavailable to

10

him under the more restrictive criminal rules. *Id.* 383. Against this backdrop, we review Barnes' claims.

### III. ANALYSIS

The Court of Appeals considered this case as an original action under CR 76.36. Thus, it served as a trial court for purposes of our review. We now consider the case as a matter of right appeal, *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 809 (Ky. 2004), keeping in mind a writ is extraordinary in nature and not to be granted lightly. *Lehmann*, 482 S.W.3d at 380.

Because Barnes concedes denying the writ was within the trial court's jurisdiction, and merely claims the stay was denied in error, whether it was properly denied will be reviewed only if Barnes has established both "no adequate remedy on appeal, and great and irreparable harm." *Grange*, 151 S.W.3d at 810. The panel's findings of fact, including Barnes' failure to prove sufficient harm, will be reviewed for clear error, and any questions of law will be reviewed de novo. *Commonwealth Fin. & Admin. Cabinet v. Wingate*, 460 S.W.3d 843, 847 (Ky. 2015).

The dispute in this case centers not on whether Barnes has an adequate remedy on appeal; all agree she does not. *Bender*, 343 S.W.2d at 802. Our focus is limited to the other mandatory showing—that she will incur great and irreparable harm—something so damaging Barnes could not overcome it. The term is variously defined as, "incalculable damage to the applicant . . . *either to the liberty of his person*, or to his property rights, or other far-reaching and conjectural consequences," *Hoskins*, 150 S.W.3d at 19 (quoting *Litteral v.*

11

*Woods*, 4 S.W.2d 395, 396-97 (Ky. 1928)), and, "something of a ruinous nature[.]" *Robertson v. Burdette*, 397 S.W.3d 886, 891 (Ky. 2013) (citation omitted).

The panel found the required showing had *not* been made because the items Barnes argues cause her concern—being deposed, answering an amended complaint, and deciding how best to defend herself when it comes to invoking the Fifth Amendment, particularly when civil jurors may draw an adverse inference should she choose to remain silent—are not unique to her, they are concerns commonly faced by defendants. And, as the appellate panel stated, Barnes can still assert her Fifth Amendment right against self-incrimination at both trials. Based on our holding in *Maze*, the panel's finding of a lack of great and irreparable harm was sound and not clear error.

At this juncture, the questions the Family *might* pose to Barnes during a deposition are unknown,[14] and whether they would even draw valid objection or the answers would come within the Commonwealth's grasp, is pure speculation. CR 26.02 permits civil discovery of any non-privileged matter

---

[14] To validly assert the Fifth Amendment, Barnes must reasonably apprehend and "show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." *In re Morganroth v. Fitzsimmons*, 718 F.2d 161, 167 (6th Cir. 1983) (citations omitted). Moreover,

> blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.

*Id.* (citations omitted).

relevant to the subject matter of the action.  Simply preferring one's legal opponent not ask a certain question or not obtain certain information does not rise to great and irreparable injury.  Nothing "ruinous" to Barnes having been stated in the petition, and Barnes' case comparing favorably to *Maze*, great and irreparable injury has not been shown and neither the circuit court nor the appellate panel erred in so finding.  Having failed to make the minimum showing required for complete review, no ground exists upon which we could find an abuse of discretion and no basis upon which we could grant a writ of prohibition or mandamus.

Before closing, we address other points argued by the parties.  First, time is of the essence.  When Barnes began her quest to stay civil discovery in March of 2019, and in successive pleadings, she requested a "short," "brief," "short-lived," and "temporary" lull in civil discovery—just until her criminal trial was completed in early April of 2020.  Barnes could not have known her "second status" case would not go forward as scheduled, but it did not.  Nor could she have predicted the cruel impact of COVID-19.  It is now March of 2021—two years post-indictment—and no criminal trial date is even on the trial court's calendar.  And, as previously noted, because she has not sought a speedy trial and is not in custody, she has no priority in being placed on the trial calendar.  Thus, Barnes is requesting an open-ended stay which is prohibited.  Any stay must be of limited, specified duration.  *Abdallah*, 313 F.R.D. at 64.

13

While Barnes has a singular goal of protecting herself, she is not the only party in this equation. The Family already believes Ridge and Eisner destroyed video evidence. Each day of delay means more faded memories and testimony the Family cannot recoup in its attempt to build its case. All parties are entitled to efficient discovery and resolution without unnecessary delay. Moreover, the public has an interest in prompt resolution of both cases, especially the civil case which may impact current Ridge patients. Under the facts presented, we simply cannot say—after the civil case has been pending more than two years—Barnes' Fifth Amendment right to remain silent trumps the Family's need for discovery, especially when less onerous measures—some mentioned by the trial court and echoed by the Court of Appeals—would adequately protect her. The Family is entitled to prompt resolution of its complaint.

Barnes suggests the Commonwealth may acquire information through civil discovery and use it to convict her. However, the Commonwealth had to be prepared to present its full case and announce "ready" in early April 2020 or risk a directed verdict or acquittal. Though possible, it is highly unlikely the prosecution has waited a year for yet-to-be-developed civil discovery to build its criminal case. Moreover, according to recent status updates provided to this Court, both the Commonwealth and Barnes have their proof—but for documents from the Inspector General—and each is ready to proceed to trial.

Barnes is represented by separate counsel in both the civil and criminal cases. If she or counsel believe the Commonwealth has improperly acquired

14

details or seeks to use information clandestinely learned through civil discovery to which it is not entitled, all Barnes need do is bring the matter to the trial court's attention and seek a ruling. Trial courts have broad power to control the discovery process and "prevent its abuse" as justice requires. *Hoffman v. Dow Chem. Co.*, 413 S.W.2d 332, 333 (Ky. 1967). In response to Barnes' specific concern the Commonwealth will use civil discovery to convict her, courts have sustained protective orders to prevent parties from using civil discovery to evade restrictions on criminal case discovery. *U.S. v. Stewart*, 872 F.2d 957, 962–63 (10th Cir. 1989).

Next, we reject Barnes' claim that the Court of Appeals misconstrued *Lehmann,* a case which focuses on the need to protect "the integrity of the criminal prosecution" by reducing an accused's procedural advantages due to differences in civil and criminal rules.[15] 482 S.W.3d at 384. Under appropriate circumstances, staying civil discovery levels the playing field in a criminal case by minimizing the ability of criminal defendants to invoke the right to remain silent—thereby denying information to the Commonwealth— while at the same time using civil discovery to gain facts with which to surprise the Commonwealth at trial. As mentioned in *Lehmann*, 482 S.W.3d at 383, criminal rules are more restrictive than civil rules for various reasons including avoiding perjury, manufactured proof, and, intimidation of potential witnesses, particularly confidential informants. *Id.*

---

[15] Compare and contrast CR 26.02 - 37.04 with RCr 7.10 - 7.24.

*Lehmann* contrasts the broad scope of civil discovery, where any non-privileged topic is fair game, with the restrictive scope of criminal discovery, where only witnesses who will be unavailable at trial may be deposed. The concern in *Lehmann* was preventing a criminal defendant who was barred from deposing witnesses in a criminal case, from deposing those same witnesses under the guise of a parallel civil case. As a result, this Court deemed issuance of a stay sought by the Commonwealth appropriate to protect the criminal process. Here, no assertion has been made Barnes is trying to use civil discovery to gain advantage in her criminal case. Similarly, no indication exists the Commonwealth is attempting to do anything impermissible. Here, Barnes makes a bare suggestion the Commonwealth *may* do something in the future she believes might negatively impact her defense. It is wholly inappropriate to punish the Family solely on rank speculation an entity beyond its control *may* do something when a protective order would guard Barnes alone and sanctions could be imposed to address any discovery violation. *See generally*, CR 30.02; *Developments in the Law - Discovery*, 74 Harv. L. Rev. 940, 986-92 (1961). Barnes misconstrues *Lehmann* in urging us to use it to protect her. Again, *Lehmann's* focus is protecting the "criminal process," not protecting the criminal defendant. 482 S.W.3d at 383.

Next, staying a civil case is not constitutionally mandated when a parallel criminal case is pending. *Dresser*, 628 F.2d at 1374. A stay is but one of many options including staying specific depositions, limiting topics, sealing interrogatories, and imposing protective orders and conditions, some of which

16

the lower court suggested, and Judge Combs mentioned in quoting *United States v. Conn*, CV 11-157-ART, 2016 WL 4803970 (E.D. Ky. Sept. 9, 2016).[16]

In *Lehmann*, we directed trial courts to be flexible and not use granting a stay as a "default position." 482 S.W.3d at 384. We described granting a stay as "a sizeable tool" available to trial courts, but only one of many tools in a trial court's procedural toolbox. Here, the trial court suggested an "individual protective order" would shield Barnes without insulating other defendants who require no protection. Other tools listed in CR 26.03 are: limiting depositions to identified terms, conditions, matters, and witnesses while being conducted in the presence of court-designated individuals; sealing a deposition upon completion and permitting review only upon court order; and, placing an embargo on disclosure. *See also* 6 Ky. Prac. R. Civ. Proc. Ann. Rule 26.03. The Court of Appeals correctly echoed this sentiment.

## IV. CONCLUSION

At this point, nothing "short," "brief" or "temporary" remains about Barnes' request for a stay of discovery. Having failed to demonstrate denial of the stay would cause her great and irreparable harm, a writ is unavailable to her. Detecting no error in the Court of Appeals' fact-finding, and issuing a writ being entirely discretionary, *Haight v. Williamson*, 833 S.W.2d 821, 823 (Ky.

---

[16] Being unpublished, *Conn* was cited as persuasive, not mandatory, authority pursuant to CR 76.28(4)(c).

17

1992), we discern no abuse, and therefore, no error.  Holding Barnes is not entitled to the requested writ, we deny the petition.

All sitting.  All concur.  Keller, J., concurs by separate opinion in which Lambert and VanMeter, JJ., join.

KELLER, J., CONCURRING: I concur with the majority that Barnes is not entitled to a writ staying all discovery in the civil case against herself and her civil co-defendants. But I write separately to address Barnes's personal Fifth Amendment rights. The majority cites to *Maze v. Kentucky Judicial Conduct Commission*, 575 S.W.3d 204 (Ky. 2019), for the proposition that discovery should not be delayed because parties remain free to assert their Fifth Amendment rights in both parallel proceedings. I dissented in *Maze* because I found the balance of *Lehmann* factors insufficient to overcome Maze's fundamental constitutional right and would have stayed the JCC's proceedings pending the criminal case's resolution.

While I maintain my concerns as voiced in *Maze*, I concur with the majority because the facts here are distinguishable from *Maze*, resulting in a balance of equities in favor of the Family. First, Barnes is seeking a complete stay on discovery for all parties. In doing so, she is attempting to stay discovery from parties whose Fifth Amendment rights she does not have standing to assert. Second, the stay in *Maze* was to be of limited duration, only a few months, while here the Family has been waiting more than two years to proceed, and Barnes's criminal matter is not yet set for trial. This delay greatly prejudices the Family, particularly if they are not permitted to pursue discovery

18

against the uncharged defendants. Lastly, and perhaps most importantly, in *Maze*, two separate and distinct adjudicative bodies were overseeing the actions. The JCC was pursuing ethical violations while the circuit court was overseeing the Commonwealth's criminal case against Maze. In contrast, the same circuit court is overseeing Barnes's civil and criminal cases. As the majority correctly notes, this will allow the trial court to craft appropriate protective orders should the Family seek to depose Barnes or compel document production from her prior to the conclusion of her criminal case. For these reasons, I find the facts of this case distinguishable from *Maze* in a way that weighs heavily for the Family, and therefore, I concur with the majority that Barnes failed to show great and irreparable harm and should be denied her writ.

Lambert and VanMeter, JJ., join.

COUNSEL FOR APPELLANT:

Mark Edward Nichols
Carl William Walter
Sarah Christina Joelle Bayne
NICHOLS, WALTER, DARLING, WELLMAN, PLLC


APPELLEE:

Honorable Julie Goodman, Judge
Fayette Circuit Court, Division 4


COUNSEL FOR REAL PARTIES IN INTEREST:

Lesley A. Cayton
Masten Childers, III
Elisabeth Megan Lyons
WHITEFORD, TAYLOR & PRESTON, LLP