Lee v. McDowell, 2021 NCBC 56.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

KEITH LEE and YOUNG KWON
(individually and derivatively on behalf
of rFactr, Inc.),

        Plaintiffs,

    v.

CHRIS MCDOWELL; CHRIS LAU; and
ROBERT DUNN,

        Defendants,

    and

RFACTR, INC.,

        Nominal Defendant.

CHRIS MCDOWELL,

        Third-Party Plaintiff,

    v.

RICHARD BRASSER and GREG
GENTNER,

        Third-Party
        Defendants.

CHRIS LAU and ROBERT DUNN,

        Third-Party Plaintiffs,

    v.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 17741

**ORDER AND OPINION ON THIRD-PARTY DEFENDANTS RICHARD BRASSER AND GREG GENTNER'S MOTION TO STAY AND CHRIS MCDOWELL'S REQUEST FOR SANCTIONS**

RICHARD BRASSER and GREG GENTNER,

    Third-Party
    Defendants.

1.   **THIS MATTER** is before the Court on Third-Party Defendants Richard Brasser ("Brasser") and Greg Gentner's ("Gentner") (together, the "Movants") Motion to Stay (the "Motion to Stay" or the "Motion"), (ECF No. 88), and Defendant and Third-Party Plaintiff Chris McDowell's ("McDowell") Response to Motion to Stay seeking sanctions ("McDowell's Request for Sanctions" or the "Request"),[1] (ECF No. 91).

2.   Having considered the Motion to Stay, McDowell's Request for Sanctions, the related briefing, and the arguments of counsel at the hearing on the Motion and the Request on 18 August 2021 (the "Hearing")[2], the Court, in the exercise of its discretion and for the reasons set forth below, **DENIES** both the Motion to Stay and McDowell's Request for Sanctions.

> *Moore & Van Allen PLLC, by Christopher Donald Tomlinson and William M. Butler, for Plaintiffs Young Kwon and Keith Lee.*
>
> *James, McElroy & Diehl, P.A., by John R. Buric, for Nominal Defendant rFactr, Inc.*
>
> *Troutman Pepper Hamilton Sanders LLP, by Mackenzie Willow-Johnson, for Defendants and Third-Party Plaintiffs Robert Dunn and Chris Lau.*

---

[1] McDowell included his request for sanctions in his Response to the Motion to Stay rather than file a separate motion. (*See* McDowell's Resp. Mot. Stay 6–8, 11–12 [hereinafter "McDowell's Resp."], ECF No. 91.)

[2] All parties were represented by counsel at the Hearing.

*Rosenwood, Rose, & Litwak, PLLC, by Erik M. Rosenwood and Carl J. Burchette, for Defendant and Third-Party Plaintiff Chris McDowell.*

Bledsoe, Chief Judge

I.

FACTUAL AND PROCEDURAL BACKGROUND

3.     Plaintiffs Keith Lee and Young Kwon (together, "Plaintiffs") filed this action on 6 September 2019.  (ECF No. 3.)  They allege that McDowell and Defendants and Third-Party Plaintiffs Chris Lau ("Lau") and Robert Dunn ("Dunn") (collectively, "Defendants") each breached their fiduciary duty of good faith as members of the board of directors of Nominal Defendant rFactr, Inc. ("rFactr" or the "Company"), a now-insolvent North Carolina corporation, (Verified Am. Compl. ¶ 3 [hereinafter "Am. Compl."], ECF No. 10), by failing to oversee Movants' actions, resulting in the demise of the Company.  (Am. Compl. ¶¶ 3, 60.)  Defendants seek indemnity and contribution from Movants for Defendants' putative liabilities via third-party complaint.  (McDowell's Answer, Affirmative Defenses, Cross-cl., and Third-Party Compl. 21–22, ECF No. 17; Lau and Dunn's Answer Pls.' Am. Verified Compl., Cross-cl. and Third-Party Compl. 21–22, ECF No. 19.)

4.     Separately, beginning as early as 4 December 2020, a federal grand jury has been investigating Movants' conduct concerning rFactr.  (McDowell's Resp. 4.)  Although Movants' counsel advised at the Hearing that neither a target letter[3] nor an indictment nor any other process has been issued against either Brasser or

---

[3] A target letter is "a prosecutor's letter to a potential defendant stating that a criminal investigation is underway and suggesting that the recipient consult counsel." *Target Letter*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Gentner, Movants contend that they face the possibility of parallel civil and criminal consequences for their conduct as rFactr's executive officers. As a result, Movants seek a stay of the claims against them in this action, including a stay of Brasser's previously-scheduled deposition, so that they will not be required to exercise their Fifth Amendment right against self-incrimination to their detriment in this civil action.

5. McDowell's Request for Sanctions focuses on Movants' counsel's conduct in scheduling Brasser's deposition and moving for a stay. Under the Court's Second Case Management Order, the deadline for the completion of all discovery in this action was 14 May 2021. (ECF No. 75.) On 23 April 2021, counsel for Plaintiffs sent an email copying all counsel of record that included as an attachment a notice of deposition for Brasser and proposed 12 May 2021 as the date for his deposition. (McDowell's Resp. Ex. A, ECF No. 91.1.) Unbeknownst to Defendants, from 6 May until 11 May 2021, Movants' counsel negotiated with Plaintiffs' counsel and offered to provide an affidavit from Brasser in lieu of a deposition. (Movants' Mem. Law Supp. Mot. Stay 3 [hereinafter "Movants' Mem. Supp."], ECF No. 89; McDowell's Resp. 5; Chris Lau and Robert Dunn's Mem. in Opp'n to Third-Party Defs.' Mot. To Stay 3 [hereinafter "Lau and Dunn's Mem. in Opp'n."], ECF No. 93.) Plaintiffs rejected this offer. After exchanging nineteen emails on 13 May 2021, all parties agreed that Brasser would be deposed on 8 June 2021. (McDowell's Resp. Ex. N, ECF No. 91.14.)

6. In the same email thread, Plaintiffs proposed an extension of the discovery deadline from 14 May 2021 to 8 June 2021 for the sole purpose of deposing Brasser. Movants' counsel advised that this extension was "acceptable." (McDowell's Resp. Ex. O, ECF No. 91.15.) Plaintiffs filed a motion for extension shortly thereafter and the Court granted it the next day, briefly extending the discovery deadline for this limited purpose. (*See* Joint Mot. Extend Disc. Deadline Sole Purpose Completing Final Dep., ECF. No. 83; Fourth Amendment Case Management Order, ECF No. 85.)

7. Six days before Brasser's deposition, Movants' counsel informed all parties that she intended to file a "motion to stay these proceedings pending the outcome" of the grand jury investigation. (McDowell's Resp. Ex. Q, ECF No. 91.17.) On 7 June 2021, the evening before Brasser's deposition, Movants' counsel filed the current Motion to Stay, through which Movants seek a stay of the case against them until either the criminal matter is resolved or a judgment is entered against Defendants that triggers their claims for indemnity and contribution from Movants. (Movants' Mot. Stay 2.)

8. Plaintiffs and Defendants oppose the Motion, and McDowell seeks sanctions against Movants and Movants' counsel for causing Defendants to incur substantial expense in scheduling and preparing for Brasser's deposition when he alleges Movants' counsel never intended for Brasser to appear and testify on the agreed-upon date. Plaintiffs, Lau, Dunn, and rFactr declined to join McDowell's Request for Sanctions.

9. The Motion to Stay and McDowell's Request for Sanctions are now ripe for resolution.

## II.

## ANALYSIS

A. Motion to Stay

10. It is within the Court's discretion whether to grant a motion to stay. *See Bryant & Assocs., LLC v. ARC Fin. Servs., LLC*, 238 N.C. App. 1, 4 (2014).

11. Movants' core contention is that permitting Brasser to be deposed would potentially impair his Fifth Amendment protections in the parallel criminal investigation and unduly prejudice him in this civil action. (Movants' Mem. Supp. 2.) In particular, Movants argue that because of the pending criminal investigation, Brasser will be forced to invoke his right against self-incrimination should he be deposed in this action, which will then be used by Plaintiffs and Defendants to his disadvantage on summary judgment and at trial.[4]

12. Plaintiffs and Defendants contend that the stay should be denied under North Carolina and federal law because neither Brasser nor Gentner has been indicted and a stay with its attendant delay would unduly prejudice them. (McDowell's Resp. 10; Pls.' Resp. to Third-Party Defs. Richard Brasser and Greg

---

[4] *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (recognizing "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *McKillop v. Onslow County*, 139 N.C. App. 53, 63–64 (2000) ("The finder of fact in a civil cause may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him.").

Gentner's Mot. to Stay, [hereinafter "Pls.' Resp. to Mot. Stay"], ECF No. 92; Lau and Dunn's Mem. in Opp'n 5–6.)

13.     There is little North Carolina case law to guide trial courts in exercising their discretion when considering requests to stay civil proceedings during a criminal investigation.  While North Carolina state courts recognize that a state trial court may stay its proceedings pending the outcome of related federal litigation, especially where the action before it involves the same parties and same issues, *see, e.g.*, *Howerton v. Grace Hosp.*, 124 N.C. App. 199, 202 (1996) (denying a motion to stay because "ordinarily, the possibility of undergoing a second trial affects a substantial right only when the same issues are presented in both trials"), neither the Court nor the parties have identified any North Carolina appellate decisions addressing the precise situation presented here.

14.     Nevertheless, there are numerous federal court decisions in this context, and the Court looks to those decisions for guidance.[5]  To begin, the United States Supreme Court has long recognized that the United States Constitution does not preclude contemporaneous criminal and civil proceedings.  *See, e.g.*, *U.S. v. Kordel*, 397 U.S. 1, 11 (1970); *Standard Sanitary Manufacturing Co. v. U.S.*, 226 U.S. 20, 52

---

[5] North Carolina courts routinely look to federal decisions for guidance on procedural matters. *See, e.g., Turner v. Duke Univ.*, 325 N.C. 152, 164, (1989) ("The North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules[,]" so "[d]ecisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules"); *Harper v. Vohra Wound Physicians of NY*, 270 N.C. App. 396, 403, (2020) (noting that the court "looked to federal decisions for guidance" when interpreting North Carolina's rules of civil procedure); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2019 NCBC LEXIS 54, at *42 n.29 (N.C. Super. Ct. Aug. 16, 2019) ("In defining the contours . . . to the attorney-client privilege, the Supreme Court of North Carolina has recognized that it is appropriate to look to federal case law for guidance").

(1912). As a result, federal courts have routinely held that a defendant does not have a constitutional right to a stay of a civil proceeding simply because the defendant may be the subject of a criminal investigation. *See, e.g.*, *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77–78 (1st Cir. 2004) (noting that "a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is in the works"); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) ("The [United States] Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) ("In the absence of substantial prejudice to the rights of the parties involved, [parallel civil and criminal] proceedings are unobjectionable under our jurisprudence.").

15. Nevertheless, the Supreme Court has made clear that courts may "defer[] civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seem[] to require such action." *Kordel*, 397 U.S. at 12, n. 27. For a court to so conclude, "[t]he proponent of a stay [must meet] the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and "clear and convincing circumstances [must] be shown in support of the stay that outweigh potential harm to the non-moving party," *Suntrust Mortg., Inc. v. Busby*, No. 2:09cv3, 2009 U.S. Dist. LEXIS 122251, at *20 (W.D.N.C. Dec. 7, 2009). Federal courts have therefore observed that "the granting of a stay of civil proceedings due to [a] pending criminal investigation is an extraordinary remedy, not to be granted lightly." *U.S. v. Simcho*, 326 Fed. Appx. 791, 792–93 (5th Cir. 2009) (quotation marks and citation

omitted); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) ("[A] stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy[.]") (cleaned up) (quotation marks and citations omitted). So, "absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Louis Vuitton*, 676 F.3d at 97.

16. When determining whether to stay civil proceedings until the completion of a criminal matter, federal courts generally use a multi-factor balancing test including some or all of the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*United FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014).[6]

17. Circuit courts have pointed out the particularized nature of this inquiry. *See, e.g.*, *Microfinancial, Inc.*, 385 F.3d at 78, ("The decision to grant or deny such a stay involves competing interests. Balancing these interests is a situation-specific

---

[6] *See also Louis Vuitton*, 676 F.3d at 99 (using the same six-factor balancing test but recognizing that balancing tests "can do no more than act as a rough guide for the . . . court as it exercises its discretion"); *Microfinancial, Inc.*, 385 F.3d at 78 (applying a substantially similar seven-factor test, including the "status of the cases"); *Keating*, 45 F.3d at 325 (applying a substantially similar five-factor test). For other potential factors, *see Suntrust Mortg., Inc.*, 2009 U.S. Dist. LEXIS 122251, at *21 ("Additional considerations have been interests of persons not party to the civil litigation . . . the danger of discovery abuse, [and] bad faith[.]").

task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it."); *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) ("A court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case."); *Dresser*, 628 F.2d at 1375 ("The court must make such determinations in the light of the particular circumstances of the case.").

18.    In the absence of guidance from North Carolina's appellate courts, the Court elects to apply the balancing analysis favored in the federal courts and considers each factor in turn.

19.    On factor one—the degree of overlap between the civil and criminal proceedings[7]—Movants contend that "[t]here is no question that there is overlap of the issues" in the civil case and the grand jury investigation. (Mem. in Supp. 2.) As proof, Movants attach an affidavit from Brasser's criminal defense counsel asserting that "the issues raised in this case appear to be identical to the issue Mr. Brasser is being investigated for in the grand jury investigation." (Motion to Stay Ex. 1 ¶ 6, ECF No. 88.1.)

---

[7] Some courts consider the overlap between the civil and criminal cases to be a threshold question that should be applied before balancing other factors, *see Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 531 (S.D. W. Va. 2005) ("the requirement of the existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay"), while other courts fold the degree of overlap into the multi-factor balancing test, *see E.M.A. Nationwide, Inc.*, 767 F.3d at 627.

20. Federal courts have held that "a stay of civil proceedings may only be appropriate when the pending civil and criminal proceedings involve substantially similar issues[,]" *Drolett v. Robinson*, No. 1:20 CV 213 MR WCM, 2021 U.S. Dist. LEXIS 35733, at *6 (W.D.N.C. Feb. 25, 2021) (quoting *Ellis v. Kirkman*, Civil Action No. 9:19-cv-2163-RMG-MGB, 2020 U.S. Dist. LEXIS 210781, at *4–5 (D.S.C. Oct. 16, 2020)), because "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay[,]" *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

21. Whether a civil defendant has been indicted carries great weight in considering this factor, otherwise "whether the proceedings *will* overlap is a matter of speculation." *United States ex rel. Shank v. Lewis Enters.*, No. 04-CV-4105-JPG, 2006 U.S. Dist. LEXIS 22065, at *10 (S.D. Ill. Apr. 21, 2006); *see, e.g., SEC v. Amerifirst Funding, Inc.*, Civil Action No. 3:07-CV-1188-D, 2008 U.S. Dist. LEXIS 21229, at *8 (N.D. Tex. 2008) (Because "no indictment has as yet been handed up against [the defendant], the court cannot determine with certainty the degree of overlap between [the civil] action and the criminal investigation."); *Alcala v. Webb County*, 625 F. Supp. 2d 391, 401 (S.D. Tex. 2009) ("Prior to an indictment, whether the issues will even overlap is a mere 'matter of speculation.'") (quoting *Shank*, 2006 U.S. Dist. LEXIS 22065, at *10); *see also, e.g., Dresser*, 628 F.2d at 1375–76 ("Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of

criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.").

22. Indictments, however, are just one way to satisfy this factor of the balancing test. Federal courts have also granted stays when criminal investigators provide notice that the criminal and civil suits involve overlapping issues. *See, e.g.*, *Ellis*, 2020 U.S. Dist. LEXIS 210781, at *5 (granting a stay where the FBI informed the defendant that it was commencing an investigation of defendant's use of force during an arrest, an event that gave rise to a parallel civil suit); *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (granting a stay after the government "submitted a sealed, *in camera* affidavit elaborating on the status of the criminal investigation").

23. But the mere existence of a criminal investigation does not guarantee that there will be an overlap with a concurrent civil case. For example, in *Suntrust Mortg., Inc.*, a case from the United States District Court for the Western District of North Carolina, the defendants feared that the FBI was investigating the same transactions underlying the civil action against them. To prove the overlap, the defendants submitted an affidavit claiming that "an interview of an unnamed defendant [had] been 'attempted' by the FBI and that the FBI would like to interview all defendants." *Suntrust Mortg. Inc.*, 2009 LEXIS 122251, at *13. The court denied the stay, even after "[a]ssuming the investigation [the affiant] suspects" was ongoing, because granting a stay where "no indictment has issued and no target letters have been provided would amount to an indefinite stay of these proceedings." *Id.* at *26.

24. Movants here present even less compelling proof of overlap than did the defendants in *Suntrust*. Not only do Movants lack an indictment or even a target letter, but they also fail to offer evidence that prosecutors have contacted Brasser or Gentner with information or questions about the criminal investigation. Instead, Movants rely on an affidavit from Brasser's criminal counsel averring "that Mr. Brasser is a target of the grand jury investigation" and an unverified claim from Movants' Reply Brief that "many of the parties have been interviewed in the course of [the criminal] investigation and thus were aware of the investigation and the subject of that investigation." (Motion to Stay, Ex. 1, ¶12; Movants' Reply Supp. Mot. Stay 3, ECF No. 98.) Because neither Brasser nor Gentner has received a subpoena, a request for an interview, or a target letter, much less been indicted, the Court concludes that the degree of overlap between this action and the criminal investigation is purely speculative, which weighs against the entry of a stay.

25. On factor two—the status of the criminal case—Movants argue that the Court should stay Brasser's civil deposition because he is a pre-indictment civil defendant under grand jury investigation. (Mem. Supp. 4.) Movants ask the Court to balance the harms in favor of Brasser, contending that the grand jury investigation puts enough pressure on Movants' Fifth Amendment privileges to warrant granting a stay. (Mem. Supp. 6.) The great weight of case law, however, is against Movants' position.

26. In cases like this one, where a civil defendant is facing a parallel criminal investigation but has not been indicted, courts will generally deny a motion to stay

the civil case. *See Maryland v. Universal Elections,* 729 F.3d 370, *380 (4th Cir. 2013) (explaining that "[s]tays generally are not granted before an indictment has issued" and noting that "[t]he district court's denial of defendants' motion to stay is in keeping with the bulk of judicial authority, which holds that stays are generally not granted before indictments have issued"); *Anderson v. Fluor Intercontinental, Inc.*, No. 1:19-cv-289, 2019 U.S. Dist. LEXIS 228916, at *7 (E.D. Va. Nov. 8, 2019) (denying a pre-indictment motion to stay and noting that "stays are rarely granted before an indictment has issued"); *U.S. SEC v. Woodard*, No. 2:13cv16, 2014 U.S. Dist. LEXIS 1573, at *5 (E.D. Va. Jan. 6, 2014) (lifting a stay and noting "[i]mportantly, this case does not involve concurrent criminal and civil proceedings, but instead involves only *the potential* for the future filing of criminal charges against Defendant"); *Suntrust Mortg., Inc.*, 2009 U.S. Dist. LEXIS 122251, at *24 (denying a motion to stay because "the mere possibility that one may be the subject of an ongoing investigation is no guarantee that one will be indicted"); *Alcala*, 625 F. Supp. at 401 ("[C]ourts generally decline to impose a stay where the defendant is under criminal investigation, but has yet to be indicted[.]"); *A. Schulman, Inc. v. Citadel Plastic Holdings*, No. 12459-VCL, 2017 Del. Ch. LEXIS 783, at *5 (Ch. Nov. 2, 2017) ("Federal authorities frequently conduct investigations, only a fraction of investigations lead to indictments, and the timeline from investigation to indictment can be protracted; consequently, the routine grant of pre-indictment stays would generate many false positives and result in lengthy delays of civil litigation.").

27. Indeed, some courts have concluded that a "pre-indictment motion to stay can be denied on this ground alone." *Citibank, N.A. v. Hakim,* 92 Civ. 6233, 1993 U.S. Dist. LEXIS 16299, *3 (S.D.N.Y. Nov. 17, 1993); *see also, e.g., Doe v. City of Scranton,* Civil Action No. 3:20-490, 2021 U.S. Dist. LEXIS 50917, *5 (M.D. Pa. 2021) ("Pre-indictment requests to stay parallel civil litigation are routinely denied because the defendant faces a reduced risk of self-incrimination. . . . When a party seeking a stay has not yet been indicted, the court may deny the motion on that ground alone.") (quotation marks and citations omitted).

28. Moreover, some circuit courts have upheld the denial of a stay even after a civil defendant has been indicted. *See Keating,* 45 F.3d at 325 (holding that "any remaining overlap between the [civil] and criminal proceedings did not make the [court's] refusal to stay the [civil] proceeding an abuse of discretion" where other factors weighed against a stay); *Louis Vuitton,* 676 F.3d at 101 (holding that it was not an abuse of discretion to deny a stay to defendants who had been indicted in a parallel criminal proceeding where other factors weighed against the stay).

29. While it is true, as Movants contend, that some courts have issued pre-indictment stays, those cases are rare, and those courts have generally done so only when the criminal investigation had been sufficiently targeted and advanced against the moving defendant, a circumstance not present here. *See, e.g., Walsh,* 7 F. Supp. 2d at 527 (granting a pre-indictment motion to stay after the government "executed search warrants and issued subpoenas to several defendants"); *Parker v. Dawson,* Nos. 06-CV-6191 (JFB) (WDW), 06-CV-6627 (JFB) (WDW), 07-CV-1268 (JFB)

(WDW), 2007 U.S. Dist. LEXIS 63068, at 15 (E.D.N.Y. Aug. 27, 2007) (granting a pre-indictment motion to stay because "a felony complaint ha[d] been filed against [defendant]").

30. As noted above, Movants have not shown any specific, targeted investigatory or prosecutorial activity against either of them. They offer no evidence that either of them have been served with subpoenas or search warrants, much less a target letter or an indictment. This factor therefore weighs against granting a stay.

31. On factor three—the interests of and burdens on the plaintiff—Movants emphasize the unique procedural posture of this case. They emphasize that the civil defendants facing criminal investigation here are *third-party* defendants who are only sued for indemnity and contribution and contend that staying the case against them will not prejudice the other parties in the case. In particular, Movants argue that Defendants will not be prejudiced by a stay because their indemnity and contribution claims will not come to bear unless a judgment is rendered against Defendants. (Supp. Mot. Stay 8.) Movants further argue that Plaintiffs will not be prejudiced because their claims can proceed against Defendants if the motion to stay is granted. (Supp. Mot. Stay 8.)

32. In pressing these arguments, however, Movants ignore Plaintiffs' contention that Brasser possesses information relevant to their claims. While Plaintiffs acknowledge that they could proceed with their claims without deposing Brasser, they argue they have the right to prosecute their claims in the manner they choose and with the evidence they seek to offer in support. (Pls.' Resp. to Mot. Stay 9 n. 3.)

And while Movants argue that Plaintiffs have failed to show that Brasser's testimony is relevant to Plaintiffs' claims, Plaintiffs identified at the Hearing specific topics they intended to cover during Brasser's deposition and have satisfied the Court that these topics are relevant to the claims they brought against Defendants. Movants have produced no case law—either in their briefs or at the Hearing— showing that their procedural posture in this action should tilt the balancing analysis in favor of a stay.

33. The Court further notes that if the case were stayed as to Movants, not only would Plaintiffs be forced to forego relevant testimony, but they would also be prejudiced by further delay in a case that has been pending for nearly two years. The outcome of the grand jury investigation remains speculative, and Movants request a stay with no ascertainable end date. Courts disfavor indefinite stays, and this, too, weighs against granting the stay that Movants seek. *See United States v. Any & All Assets of Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1992) (noting that "stays should not be indefinite ones"); *AvalonBay Cmtys., Inc. v. San Jose Water Conservation Corp.*, No. 07-306, 2007 U.S. Dist. LEXIS 63773, at *6 (E.D. Va. Aug. 27, 2007) (denying a motion to stay, noting that "[p]laintiff will be prejudiced by the undeterminable time length of any criminal prosecution because this makes it more likely that: (1) documents will be misplaced, (2) memories will fade and (3) [d]efendants will have fewer monetary resources available for [p]laintiff to collect on any financial judgment"); *see also Suntrust Mortg., Inc.*, 2009 LEXIS 122251, at *24 (rejecting a stay and noting that "the mere possibility that one may be the subject of an ongoing investigation is no guarantee that one will be indicted or that the

investigation will go any further than an Assistant United States Attorney's desk. If such matter proceeds further, it may in fact take years to for a grand jury to complete its investigation, which is also no guarantee that an indictment will issue.").

34. On factor four—the interests of and burdens on the defendant—Movants argue that the unpredictability of the criminal investigation is itself grounds for a stay because it would be unfair for Movants to invoke the Fifth Amendment unnecessarily: "if Brasser was compelled to appear at his deposition he would have no option but to invoke his Fifth Amendment right in response to any question he is asked, while he may not ultimately need to do so if the federal grand jury does not issue an indictment." (Mem. in Supp. 6.) Movants complain that, faced with the possibility (but not certainty) of criminal prosecution, Brasser could later learn that invoking the Fifth Amendment in his civil deposition harmed his defense in this action.

35. However, the fact that Brasser "may not ultimately need to" invoke the Fifth Amendment, (Mem. in Supp. 6), is precisely why this factor weighs against granting a stay—his criminal jeopardy is speculative while the delay from granting a stay is certain. *See, e.g.*, *Microfinancial, Inc.*, 385 F.3d at 79 ("While pre-indictment stays of parallel civil proceedings occasionally have been granted, an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for such extraordinary relief."); *A. Schulman, Inc.*, 2017 Del. Ch. LEXIS 783, at *8 (holding that the concern over defendants' "potentially difficult choice of 'waiving their Fifth Amendment rights

during civil discovery or asserting the privilege and losing the civil case' . . . is substantially reduced when the defendants have not yet been indicted") (quoting *In re Herley Indus. Sec. Litig.*, No. 06-2596, 2007 U.S. Dist. LEXIS 27201, at *9 (E.D. Pa. Apr. 11, 2007)).

36.     After careful review, the Court concludes that the burden on Movants, while real, is substantially reduced in the present circumstances where no investigatory action has been directed against them and no indictment has issued.  Accordingly, the Court finds that this factor should not be afforded great weight in the balancing test and further finds that the burden on Movants is outweighed by the burden the other parties would suffer from the delay attendant to the requested stay.

37.     On factor five—the interest of the court—the Court notes that it has an interest in resolving disputes expeditiously.  *See, e.g., In re Scrap Metal Antitrust Litig.,* Case No. 1:02CV0844, 2002 U.S. Dist. LEXIS 28690, * 21 (N.D. Ohio Nov. 7, 2002) (noting that a court "has an obligation to move its docket, and not let cases languish before it"); *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp 802, 808 (E.D.N.Y 1992) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged.").  This case has been pending for two years.  At the time the Motion was made, discovery was a few days from its close and had been extended solely to permit Brasser's deposition.  Entering the requested stay now would postpone the resolution of this action to an unknown, likely faraway date based entirely on Movants' speculative concern of a possible criminal prosecution.  The Court's interest in the prompt adjudication of

justice therefore weighs against the entry of a stay. *See, e.g., Microfinancial, Inc.*, 385 F.3d at 79 (affirming the denial of a stay, in part because "the court had an interest in moving [the case] along, especially since the defendants were, in effect, asking to stay proceedings for an indefinite (and potentially protracted) period").

38. On factor six—the public interest—one federal court has persuasively observed that "it is not in the public interest to require plaintiff, which has promptly asserted its causes of action, to wait indefinitely because defendants may also be subject to a criminal investigation or criminal prosecution on the same or substantially the same underlying allegations." *Suntrust Mortg., Inc.*, 2009 U.S. Dist. LEXIS 122251, at *26. This factor, too, weighs against granting a stay.

39. To sum up, federal courts uniformly hold that stays are not generally granted before a grand jury indicts a defendant—the procedural posture the Court faces here. The degree of overlap between the civil and criminal cases is speculative because the grand jury has not involved Movants in their investigation, much less issued a target letter to or an indictment against either Movant. Plaintiffs have shown that Brasser's testimony is relevant to their claims against Defendants, and Plaintiffs and Defendants have shown that they would be prejudiced by an undue and unfair delay if a stay were granted. Finally, the Court and the public would benefit from resolving this dispute expeditiously, while the requested stay would postpone final resolution of this matter indefinitely. Movants may face some hardship if they invoke the Fifth Amendment in this action, but all the other balancing test factors

weigh against granting the Motion. The Court, therefore, concludes, in the exercise of its discretion, that the Motion to Stay should be denied.

B. McDowell's Request for Sanctions

40. The Court next turns to McDowell's Request for Sanctions.[8] Under North Carolina law, the Court has "broad discretion to determine if sanctions [are] appropriate." *State v. Russell*, 271 N.C. App. 560, 565 (2020) (quoting *State v. Nolen*, 144 N.C. App. 172, 184 (2001)).

41. McDowell alleges that Brasser's counsel arranged for Brasser's deposition fully aware that she would not permit Brasser to testify and then waited to file a motion to stay to postpone the deposition the day before the deposition was scheduled to take place. (McDowell's Resp. 5–6.) McDowell seeks sanctions for his reasonable costs and attorneys' fees related to the scheduling of Brasser's deposition, preparing for the deposition, and responding to the Motion to Stay. (McDowell's Resp. 6.) Although Brasser's counsel's conduct equally impacted all parties to the litigation, no other party has joined in McDowell's Request.

42. After carefully considering the record evidence, the briefs, and the arguments of counsel at the Hearing, including Movants' counsel's explanation for the conduct on which McDowell bases his Request, the Court, in the exercise of its discretion, declines to impose sanctions in the totality of the circumstances here. *See, e.g.*, *State v. Aguilar-Ocampo*, 219 N.C. App. 417, 422 (2012) (citation omitted)

---

[8] Although Movants challenge McDowell's Request for Sanctions on grounds that McDowell failed to file a separate motion and supporting brief as required under Business Court Rule 7.2, the Court nonetheless elects to consider the merits of McDowell's Request, assuming without deciding that the Request is properly made.

("Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion.").

IV.

CONCLUSION

43. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

A. The Motion to Stay is hereby **DENIED**; and

B. McDowell's Request for Sanctions is hereby **DENIED.**

   **SO ORDERED**, this the 14th day of September, 2021.

                                    /s/ Louis A. Bledsoe, III
                                    Louis A. Bledsoe, III
                                    Chief Business Court Judge