T.C. Memo. 2012-158

UNITED STATES TAX COURT

IRONBRIDGE CORP. AND SUBSIDIARIES f.k.a. PITT-DES MOINES, INC.,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

IRONBRIDGE CORP. AND SUBSIDIARY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24156-07, 27523-07.                    Filed June 5, 2012.

Jasper G. Taylor III, Richard L. Hunn, and Susan V. Sample, for petitioners.

Deborah H. Delgado and Travis T. Vance III, for respondent.

MEMORANDUM OPINION

GOEKE, Judge:  This matter is before the Court on petitioners' motion to dismiss these cases and to enter decisions against petitioners; respondent objects to petitioners' motion. We will grant petitioners' motion and enter decisions.

## Background

Respondent issued a notice of deficiency to Ironbridge Corp. (formerly Pitt-Des Moines, Inc.) & Subs. (Ironbridge Corp.) on July 24, 2007, which determined deficiencies and section 6662[1] accuracy-related penalties for 2001 and 2002. Respondent also issued a notice of deficiency to Ironbridge Corp. on August 31, 2007, which determined deficiencies and section 6662 accuracy-related penalties for 2003 and 2004. Petitioners timely filed petitions contesting the deficiencies and penalties, and the cases were consolidated for trial. For each of the taxable years at issue, petitioners filed a consolidated Federal income tax return which reported Ironbridge Corp. as the common parent of the affiliated group of corporations. Ironbridge Corp. is a Delaware corporation, and at the time the petitions were filed in these cases, its principal office and mailing address was in New York.

The deficiencies and penalties result from respondent's determination that petitioners entered into several complicated foreign currency option transactions with a foreign tax shelter (devised by the accounting firm KPMG) which lacked economic substance. Similar transactions devised by KPMG became the basis for a

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Internal Revenue Code of Practice and Procedure.

Federal criminal investigation by the U.S. Attorney's Office for the Southern District of New York. That investigation ultimately resulted in indictments and prosecution in the U.S. District Court for the Southern District of New York of several people involved in the transactions. See United States v. Stein, docket No. 1:05-cr-00888-LAK (S.D.N.Y. filed Aug. 24, 2005).

Although he has not been indicted or tried, the principal of petitioners, James Haber, believes he was one of the persons involved in the criminal investigation. Mr. Haber stated during deposition testimony that he believes he became a potential "target" of the criminal investigation around "2002 or 2003". While Stein concluded in June 2009, the related criminal investigation is ongoing. On September 11, 2009, the U.S. Attorney's Office for the Southern District of New York sent a letter to counsel for Mr. Haber which confirmed that there is an "on-going investigation by the U.S. Attorney's Office for the Southern District of New York * * * of various individuals and entities involved in tax shelter activities" but stated that "the Office and the Tax Division, Department of Justice, have no present intention of seeking criminal charges against Mr. Haber or his companies with respect to the tax benefits claimed by client taxpayers from the shelter transactions in which Haber and his companies were involved."

The criminal proceedings delayed the trial of these cases several times.[2] On May 13, 2011, petitioners filed a motion for stay of proceedings, stating that "allowing this case to proceed to trial would likely put the petitioners in the difficult position of being unable to put on their case, as Mr. Haber and other personnel of his companies would likely invoke the Fifth Amendment with respect to interrogatories, depositions, and trial testimony." The "other personnel" who would also likely invoke the Fifth Amendment were not identified. Respondent objected to petitioners' motion for stay of proceedings, and the motion was denied on August 16, 2011.

On March 27, 2012, petitioners filed a motion to dismiss the consolidated cases and enter decisions against them. Petitioners stated that they filed the motion as a result of their inability to present the testimony of Mr. Haber and other individuals who planned to invoke their Fifth Amendment rights. Petitioners claim that the lack of such testimony "would prevent the petitioners from being able to put on their case at trial" because "Testimony from * * * [these] witnesses is critical to petitioners' ability to meet their burden of proof in these

---

[2]Pursuant to joint requests by the parties, the trial was continued on December 9, 2008, and June 10 and December 2, 2009, as a result of the criminal proceedings. In addition to these 18 months, the parties also spent substantial time in trial preparation.

cases". Respondent objected to petitioners' motion to dismiss on the grounds that "The principles of judicial economy require a final determination of these issues in this proceeding, which only a decision on the merits or an agreed stipulated decision can produce." Respondent is concerned that petitioners' motion "is merely an attempt to unnecessarily prolong and delay this proceeding."

Discussion

## I. Denial of Petitioners' Motion for Stay of Proceedings

Petitioners filed their motion to dismiss and enter decisions as a result of our refusal to grant their motion for stay of proceedings. We therefore begin with an explanation of why we have determined a stay of proceedings is no longer appropriate.

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of a related criminal case. Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980). A court nevertheless has discretion to stay civil proceedings "'when the interests of justice seem to require such action.'" Keating, 45 F.3d at 324 (quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)). Upon a showing of "special circumstances", we will stay the case so as to prevent "substantial and irreparable prejudice." SEC v. First Fin. Grp. of Tex., Inc., 659

F.2d 660, 668 (5th Cir. 1981). However a stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as "'an extraordinary remedy'". Louis Vuitton Malletier, S.A. v. Ly USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012) (quoting Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Various courts have formulated multifactor tests to apply in deciding whether, in the light of these hazards to the defendants in the civil proceedings against them, to grant a stay of those proceedings. Louis Vuitton Malletier, S.A., 676 F.3d at 99. The District Courts of the Second Circuit have often used the following six-factor balancing test: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant (here, petitioners) has been indicted; (3) the private interests of the plaintiff (here, respondent) in proceeding expeditiously weighed against the prejudice to plaintiff (respondent) caused by the delay; (4) the private interests of and burden on the defendant (here, petitioners); (5) the interests of the courts; and (6) the public interest. Id. at 99-100. After considering each factor, as explained herein, we found the cumulative weight of the factors to favor denying the stay. We therefore denied petitioners' motion for stay of proceedings.

A.  Overlap of Issues

Petitioners allegedly entered into transactions with tax shelters devised by KPMG.  Similar transactions devised by KPMG became the basis for the indictment and prosecution of several people involved in the transactions.  We believe both these cases and the related criminal investigation revolve around the purpose and operation of similar complicated financial transactions, and thus the cases overlap considerably.  This factor weighs in favor of a stay.

B.  Status of the Case

A stay of a civil case is most appropriate where a party to the civil case has already been indicted, and "stays will generally not be granted before an indictment is issued."  Trs. of Plumbers & Pipefitters Nat'l Pension Fund, 886 F. Supp. at 1139.  In these cases Mr. Haber has not been indicted.  In addition, while the Government has not granted Mr. Haber immunity from criminal prosecution, the Government has indicated it has no plans to prosecute him or his companies.  Although Mr. Haber claims to have been a target of a criminal investigation for nearly 10 years, no action has been taken.  This factor weighs against a stay.

C.  <u>Interests of and Prejudice to Respondent</u>

In addition to the potential loss of evidence and testimony as time passes,

respondent faces increasing difficulty in collecting from petitioners (or others as

transferees).  This factor weighs against a stay.

D.  <u>Interests of and Burden on Petitioners</u>

Even if Mr. Haber invoked the Fifth Amendment, petitioners' actions can be

proven through the testimony of employees[3] and through contemporaneous

corporate records.  <u>See, e.g.</u>, <u>Bellis v. United States</u>, 417 U.S. 85, 88 (1974)

(individuals cannot rely on the Fifth Amendment privilege to avoid producing the

records of a collective entity).  In economic substance cases like this one, the

mechanics of the deal will necessarily be reflected in transactional documentation.

This factor weighs against a stay.

E.  <u>Interest of the Courts</u>

This factor may favor a stay in a case when it is possible to use the criminal

judgment as a basis for collateral estoppel in a related civil case.  A stay may also

ensure that civil discovery (when it resumes) will proceed unobstructed by concerns

of self-incrimination.  These interests are stronger when the cases share a large

---

[3]Petitioners' motion for stay of proceedings did not identify employees who might invoke the Fifth Amendment in refusing to testify.

number of common issues.  See Dresser Indus., Inc., 628 F.2d at 1375-1376 ("[T]he strongest case for deferring civil proceedings * * * is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.").  However, petitioners are not at risk of criminal prosecution (thereby reducing the possible future use of collateral estoppel to zero), and it does not appear likely that Mr. Haber is in criminal jeopardy.  Given that it is uncertain whether Mr. Haber will even be indicted, granting the motion could result in the imposition of a lengthy and indeterminable stay for no reason.  This factor weighs against a stay.

F.  Public Interest

The public's interest involves the resolution of disputes with minimal delay, but only to the extent that it does not jeopardize the integrity of a criminal proceeding.  Alcala v. Tex. Webb Cnty., 625 F. Supp. 2d 391, 407 (S.D. Tex. 2009).  The integrity of a criminal proceeding will generally be at stake when the noncriminal proceeding may expand rights of criminal discovery beyond the limits of rule 16(b) of the Federal Rules of Criminal Procedure, undermine the party's Fifth Amendment privilege against self-incrimination, expose the basis of the defense to the prosecution in advance of a criminal trial, or otherwise prejudice the criminal case.  Dresser Indus., Inc., 628 F.2d at 1376.  The fact that Mr. Haber has

not been indicted during a lengthy investigative period makes it much less likely that the integrity of a criminal proceeding will be jeopardized. In addition, issuing a stay in such a case could result in the imposition of a lengthy and indeterminable delay before resolution of these cases. This factor weighs against a stay.

II. Motion To Dismiss

Under section 7459(d), if a petition has been filed in the Tax Court and we dismiss the case for any reason other than lack of jurisdiction, we must enter an order finding the deficiency in tax to be the amount determined by the Commissioner in his notice of deficiency unless the Commissioner reduces the amount of his claim. Estate of Ming v. Commissioner, 62 T.C. 519 (1974). Thus, if we were to grant petitioners' motion, we would be required to enter decisions finding deficiencies in petitioners' taxes for the years involved in the amounts respondent determined in the notices of deficiency. See id. Petitioners have acknowledged several times in their motion to dismiss that if their motion is granted, decisions will be entered against them in these cases.

The acceptance or rejection of a proffered concession is a matter within the discretion of this Court, and we should exercise our discretion in accordance with the "interest of justice". See Jones v. Commissioner, 79 T.C. 668, 673 (1982); McGowan v. Commissioner, 67 T.C. 599, 607 (1976). Respondent has not

suggested how the interests of justice would compel us to deny petitioners' motion,[4] and we can conceive of no injustice in granting petitioners' motion.  We therefore will grant petitioners' motion to dismiss.

To reflect the foregoing,

<u>An appropriate order will be issued, and decisions will be entered for respondent</u>.

---

[4]Respondent has stated that petitioners' motion is merely an attempt to delay the proceedings and that judicial economy requires either a decision on the merits or else execution of "a stipulated decision effectuating a final, full, and complete concession of this case by petitioners."  However, respondent has not specified how granting petitioners' motion would delay the proceedings.  We note that "A decision rendered upon a default or in consequence of a dismissal, other than a dismissal for lack of jurisdiction, shall operate as an adjudication on the merits."  Rule 123(d); see also <u>Settles v. Commissioner</u>, 138 T.C. ___, ___ (slip op. at 4)  (May 8, 2012); <u>Estate of Ming v. Commissioner</u>, 62 T.C. 519, 522-523 (1974).