# United States Tax Court

T.C. Memo. 2025-94

JOSEPH R. GOTTESMAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 27005-21.                    Filed September 10, 2025.

————

Joseph R. Gottesman, pro se.

*Alicia E. Elliott*, *Michael R. Harrel*, and *Bryan T. Jensen*, for respondent.

MEMORANDUM OPINION

JONES, *Judge*:  Pursuant to section 6213(a),[1] petitioner, Joseph R. Gottesman, M.D., seeks redetermination of the deficiencies in federal income tax and penalties, including civil fraud penalties, determined by the Internal Revenue Service (IRS) for tax years 2009, 2010, 2011, and 2012 (tax years at issue).

Currently before the Court are two motions filed by the parties: (1) respondent's Motion for Summary Judgment, filed September 4, 2024; and (2) Dr. Gottesman's Motion to Stay All Proceedings (Motion to Stay), filed on November 29, 2024. The issues for decision are (1) whether there are deficiencies in income tax due from Dr. Gottesman

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*2]** for the tax years at issue and (2) whether Dr. Gottesman is liable for civil fraud penalties for the tax years at issue.

For the reasons discussed below, we will grant respondent's Motion for Summary Judgment, and we will deny Dr. Gottesman's Motion to Stay.

## Background

The following facts are based on the parties' pleadings, the deemed admissions, and the Declaration and Exhibits attached to the Motion for Summary Judgment. This background is stated solely for the purpose of resolving the present motions and is not stated as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

I.    *Procedural History*

On October 18, 2021, the Court timely filed as a Petition a copy of the Notice of Deficiency issued to Dr. Gottesman in Mexico, dated May 24, 2021 (NOD).[2] Pursuant to a subsequent Order of the Court, Dr. Gottesman filed a First Amendment to Petition (Amended Petition) on December 14, 2021. In the Amended Petition, Dr. Gottesman indicated that he disputes the NOD. He also acknowledged that he is under criminal investigation and that he has "imminent fear of prosecution and do[es] not wish to waive [his] [Fifth] Amendment Constitutional rights."

The NOD was sent to Dr. Gottesman at an address in Mexico. In the Amended Petition, Dr. Gottesman reported a mailing address in Laredo, Texas, but he gave his state of legal residence as Jalisco, Mexico.[3]

---

[2] Section 6213(a) provides that a petition for redetermination of a deficiency is timely if it is filed within 150 days after the NOD is issued if it is "addressed to a person outside the United States." Because the NOD was addressed to Dr. Gottesman in Mexico, the Petition was timely because it was filed within 150 days of the date of mailing of the NOD.

[3] Section 7482(b)(1) provides that in the case of an individual petitioner seeking redetermination of a tax liability, an appeal will lie in the U.S. court of appeals for the circuit corresponding to the legal residence of the petitioner. In the First Amendment to Petition, Dr. Gottesman provided a mailing address in Laredo, Texas, but indicated that his legal residence is in Jalisco, Mexico. Further, he requested Phoenix, Arizona,

**[*3]** On February 10, 2022, respondent filed an Answer to Petition, As Amended (Answer) and asserted facts that went unanswered by Dr. Gottesman. Thus, on May 4, 2022, respondent filed a Motion for Entry of Order that Undenied Allegations in Answer Be Deemed Admitted pursuant to Rule 37(c). Dr. Gottesman failed to respond after being given multiple extensions to do so. By Order dated June 13, 2023, the Court deemed admitted the undenied allegations in the Answer.

On July 18, 2024, the Court set this case for trial on the calendar of the Court's December 16, 2024, trial session in Phoenix, Arizona. On September 4, 2024, respondent filed the Motion for Summary Judgment and an accompanying Declaration with Exhibits. By Order dated September 5, 2024, we directed Dr. Gottesman to file with the Court, and serve on respondent, a response or objection to the Motion for Summary Judgment. The deadline for Dr. Gottesman to comply with the Order was September 26, 2024, and he was warned that failure to respond might result in the entry of a decision against him.

On September 23, 2024, Dr. Gottesman filed a Motion and Request to Grant Petitioner an Extension of 30 Days to File Response or Objection to Respondent's Motion for Summary Judgment, which we granted. However, because Dr. Gottesman had filed seven motions for extension of time throughout the life of this case, we warned that no further requests for additional time would be granted. Dr. Gottesman's new deadline to file a response to the Motion for Summary Judgment was October 25, 2024.

On October 25, 2024, Dr. Gottesman filed another Motion and Request to Grant Petitioner an Extension of 30 Days to File Response or Objection to Respondent's Motion for Summary Judgment. The Court denied Dr. Gottesman's latest motion and set respondent's Motion for Summary Judgment for a hearing at the aforementioned trial session. As of this date, the Court has received no response or objection to the Motion for Summary Judgment, despite warning Dr. Gottesman that failing to respond could result in a decision entered against him and

---

as the place for trial. Thus, it is not entirely clear whether the parties will stipulate a venue for an appeal, if any, in this case. However, absent an agreement otherwise, it appears that venue for appeal would be the U.S. Court of Appeals for the District of Columbia Circuit. *See* § 7482(b)(1) (flush language); *see also Adams v. Commissioner*, 122 F.4th 429, 433 (D.C. Cir. 2024) ("The D.C. Circuit is the default venue for appeals of Tax Court decisions."), *aff'g* 160 T.C. 1 (2023); *Estate of Israel v. Commissioner*, 159 F.3d 593, 595 (D.C. Cir. 1998) (holding that D.C. Circuit was proper venue where one taxpayer's legal residence was Bermuda), *rev'g and remanding* 108 T.C. 208 (1997).

[*4] providing him with information about the availability of a taxpayer clinic that might be able to assist him. *See* Rule 121(d).

On November 14, 2024, respondent filed a Status Report with attachments, advising the Court of Dr. Gottesman's pending criminal case in the U.S. District Court for the District of Arizona (District of Arizona). One of the attachments to respondent's Status Report shows that on November 12, 2019, Dr. Gottesman was indicted for a single count of tax evasion under section 7201. The indictment alleges that from 2009 through 2019 Dr. Gottesman willfully attempted to evade and defeat the payment of income tax due and owing by him to the United States for tax year 2008. Dr. Gottesman remains in Mexico and has not been arraigned, but there is an active warrant for his arrest.

Instead of responding to the Motion for Summary Judgment, on November 29, 2024, Dr. Gottesman filed another Motion to Stay, asserting that the case should be stayed, predominantly because he was indicted for tax evasion and feared arrest if he appeared at trial. He also made a blanket assertion of Fifth Amendment privilege. Respondent filed a Notice of Objection to Motion to Stay Proceedings, and we set Dr. Gottesman's latest Motion to Stay for a hearing at the same time as the hearing on the Motion for Summary Judgment. On December 12, 2024, Dr. Gottesman filed a Reply to Opposition to Stay and Request for Appearance via Zoomgov. At the December 16 hearing, the Court denied Dr. Gottesman's request to appear via Zoom and explained its reasoning.

Other than filing motions for extension of time and motions to stay, Dr. Gottesman has not participated in this case by complying with the Court's deadlines and requirements, including those set forth in the Standing Pretrial Order. Further, Dr. Gottesman failed to appear for the scheduled hearings, despite being warned that failure to appear for either of the hearings or the trial could result in the dismissal of his case and entry of a decision against him.

II.    *Work History*

During the tax years at issue Dr. Gottesman was a practicing medical doctor, licensed in Arizona. During these same years, Dr. Gottesman performed medical services as an independent contractor, including for East Valley Internal Medicine, Premier Physicians Group, Clinica La Familia, and Premier Medical. At each of these clinics he was paid for those medical services and received checks that were net of

[*5] expenses. In addition, Dr. Gottesman operated a medical services business as a sole proprietorship.

At times during the tax years at issue Dr. Gottesman was a member of various medical centers. During all relevant times Dr. Gottesman was a member of Southwest Internal Medicine and Pain Center, PLLC (SWIM). Dr. Gottesman was treated as a general partner of SWIM during the tax years at issue. From 2010 through 2012, Dr. Gottesman was also a member and treated as a general partner of Health and Pain Centre LLC (HPC), which elected to be taxed as a partnership.

During the tax years at issue Dr. Gottesman deposited some—but not all—of his compensation for medical services into bank accounts under his control. In addition, Dr. Gottesman failed to maintain books and records for his businesses. He also used nominees to conceal assets and income from the IRS.

III.    *Filing History and Examination*

Dr. Gottesman was aware that he is required to file a timely federal income tax return. Nonetheless, he did not file individual income tax returns from 2009 through 2012 by the due dates for filing, nor did he request extensions of time to file the returns. In 2014 Dr. Gottesman filed a late income tax return for tax year 2008, but he did not pay the tax shown as due on his delinquently filed 2008 income tax return.

In 2014 the IRS initiated an examination for Dr. Gottesman's tax years 2008 through 2013. Revenue Agent Julie Williams (RA Williams) was assigned to examine, inter alia, Dr. Gottesman's tax years at issue. Dr. Gottesman did not cooperate with the examination. Moreover, although the examining agent requested that delinquent tax returns be filed with her, Dr. Gottesman failed to do so. And, as noted above, Dr. Gottesman did not maintain books and records, and he used nominees to conceal assets. Thus, RA Williams used Dr. Gottesman's bank records—which were obtained via summonses—as well as information reported on third-party information returns, to determine Dr. Gottesman's correct taxable income for each of the tax years at issue.

In 2015 Dr. Gottesman requested and received a collection due process (CDP) hearing with respect to his unpaid 2008 income tax liability. On August 10, 2015, Dr. Gottesman submitted delinquent tax returns he prepared for the tax years at issue to the officer assigned to the CDP hearing.

**[*6]**    On those tax returns Dr. Gottesman fraudulently—and with the intent to evade tax—understated his income tax liability for each of the tax years at issue, as reflected on the table below:

|  | *2009* | *2010* | *2011* | *2012* |
|---|---|---|---|---|
| Corrected Tax Liability | $206,125 | $128,746 | $163,742 | $115,336 |
| Less Tax Shown on Return | 89,285 | 65,995 | 60,555 | 69,884 |
| **Deficiency** | **116,840** | **62,751** | **103,187** | **45,452** |

For the tax years at issue Dr. Gottesman (1) underreported gross receipts on Schedule C, Profit or Loss From Business; (2) did not report partnership income or guaranteed payments from SWIM (for 2009 through 2012) or HPC (for 2011); and (3) did not report taxable dividends or interest payments.[4] In addition, Dr. Gottesman fraudulently—and with the intent to evade tax—underpaid his income tax for each of the tax years at issue.

RA Williams made the initial determination to assert civil fraud penalties under section 6663 against Dr. Gottesman for the tax years at issue. Tim Salsberry, RA Williams's immediate supervisor, personally approved the section 6663 penalties by signing the Civil Penalty Approval Form on September 24, 2019. The NOD—dated May 24, 2021—was the first formal communication of the IRS's determination to assert section 6663 penalties against Dr. Gottesman.

*Discussion*

I.    *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as

---

[4] The Answer (and thus the deemed admissions) contains typographical errors setting forth the corrected tax liabilities and tax shown on the returns. We have corrected these obvious typographical errors. *See, e.g.*, *Gondal v. Commissioner*, T.C. Memo. 2024-36, at *4 n.3 (correcting obvious typographical errors related to answer and deemed admissions in case involving fraud under section 6663); *Goodman v. Commissioner*, T.C. Memo. 1985-151, 1985 Tax Ct. Memo LEXIS 480, at *1 n.1 ("Since this Court has jurisdiction to redetermine the correct amount of deficiencies determined by respondent, we may correct respondent's typographical error."); *Hayes v. Commissioner*, T.C. Memo. 1980-307, 1980 Tax Ct. Memo LEXIS 281, at *3 n.1 (correcting obvious typographical error in the parties' stipulation).

**[\*7]** a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party must respond and may not rest upon mere allegations or denials in their pleadings. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Because Dr. Gottesman did not respond to the Motion for Summary Judgment, we can enter a decision against him for this reason alone. *See* Rule 121(d). Moreover, consideration of the merits of the Motion would not yield a different result. Therefore, we will grant the Motion for Summary Judgment.

II.     *Deficiency Determinations*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); *see Welch v. Helvering*, 290 U.S. 111, 115 (1933). In certain circumstances, section 7491 may shift the burden of proof to the Commissioner if the taxpayer (among other things) "introduces credible evidence" with respect to those issues. *See* § 7491(a)(1).

In cases of unreported income, "the Commissioner must establish a 'minimal evidentiary showing' connecting the taxpayer with the alleged income-producing activity," *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019) (quoting *Blohm v. Commissioner*, 994 F.2d 1542, 1549 (11th Cir. 1993), *aff'g* T.C. Memo. 1991-636), "or demonstrate that the taxpayer actually received unreported income," *Walquist*, 152 T.C. at 67 (citing *Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir. 1982)). "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Id.* at 67–68 (first citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); and then citing *Tokarski v. Commissioner*, 87 T.C. 74 (1986)). The IRS may rely on a third-party income report if the taxpayer does not raise a reasonable dispute about its accuracy. *See* § 6201(d). Dr. Gottesman has neither claimed, nor introduced credible evidence sufficient to show, that the Commissioner's determinations were arbitrary or erroneous with respect to his unreported income.

**[\*8]**    Moreover, the evidence before the Court demonstrates that the Motion for Summary Judgment is factually supported and that there is no genuine dispute as to any material fact. *See* Rule 121(a)(2). The factual assertions are not disputed by Dr. Gottesman. Further, the legal arguments are sound and demonstrate that a decision may be rendered as a matter of law. *See id.* Dr. Gottesman offers no contrary authorities or arguments. Accordingly, we will sustain the Commissioner's deficiency determinations.

III.    *Penalties*

Next, we examine the Commissioner's civil fraud penalty determinations. First, we examine whether the Commissioner complied with the procedural requirements of section 6751(b)(1). Then, we turn to the civil fraud penalties pursuant to section 6663.

A.      *Penalty Approval Under Section 6751(b)(1)*

The Commissioner bears the burden of production with respect to an individual taxpayer's liability for any penalty, requiring the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate. *See* § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). As part of that burden, the Commissioner must produce evidence of compliance with the procedural requirements of section 6751(b)(1). *See Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Graev*, 149 T.C. at 492–93.

The parties do not dispute that the requirements of section 6751(b) were met. Further, the record establishes that the IRS secured timely supervisory approval to assert the penalties. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020); *see also Lamprecht v. Commissioner*, 98 F.4th 1132, 1136–37 (D.C. Cir. 2024), *aff'g* T.C. Memo. 2022-91; *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1071 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020). Accordingly, respondent has satisfied his burden with respect to section 6751(b).

[*9]  B.    *Section 6663 Civil Fraud Penalties*

Section 6663(a) and (b) imposes a penalty equal to 75% of an underpayment of tax if any part of the underpayment is due to fraud. Once the Commissioner establishes that part of an underpayment is due to fraud, the entire underpayment is treated as "attributable to fraud," except to the extent the taxpayer establishes that some part is not. *See* § 6663(b). The Commissioner must prove fraud by "clear and convincing evidence." *See* § 7454(a); Rule 142(b); *Castillo v. Commissioner*, 84 T.C. 405, 408 (1985) ("The burden of proving fraud is on [the Commissioner], and he must do so by clear and convincing evidence."). To carry that burden, the Commissioner must show that (1) an underpayment of tax exists for the year(s) at issue and (2) some part of the underpayment is attributable to fraud. *See DiLeo v. Commissioner*, 96 T.C. 858, 873 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). Deemed admissions are sufficient to satisfy the Commissioner's burden of proof as to fraud. *See Doncaster v. Commissioner*, 77 T.C. 334, 337 (1981); *see also Voccola v. Commissioner*, T.C. Memo. 2009-11, 2009 WL 103367, at *8 (observing that the Commissioner can satisfy his burden of proof as to section 6663 fraud penalties by deemed admissions).

Respondent has satisfied the first part of the test. As set forth *supra Background* Parts II and III, respondent has clearly and convincingly demonstrated that Dr. Gottesman has an underpayment of tax for each of the tax years at issue. Thus, the first element of the civil fraud penalty has been established.

Next, we must determine whether any portion of any underpayment is attributable to fraud. *See DiLeo*, 96 T.C. at 874. Fraud is an intentional wrongdoing on the part of the taxpayer, with the specific purpose of evading a tax believed to be owing. *Petzoldt v. Commissioner*, 92 T.C. 661, 698 (1989). Fraud is never presumed and must be established by independent evidence of fraudulent intent. *See Frazier v. Commissioner*, 91 T.C. 1, 12 (1988); *Purvis v. Commissioner*, T.C. Memo. 2020-13, at *34. Fraud may be shown by circumstantial evidence; direct evidence of a taxpayer's fraudulent intent is seldom available. *See Petzoldt*, 92 T.C. at 699. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *See Niedringhaus v. Commissioner*, 99 T.C. 202, 210 (1992). Fraudulent intent may also be inferred when a taxpayer files a document intending to conceal, mislead, or prevent the collection of tax. *Durland v. Commissioner*, T.C. Memo. 2016-133, at *79.

[*10] Courts often rely on various "badges" of fraud to find circumstantial evidence of fraud. *DiLeo*, 96 T.C. at 874–75; *see also Vanover v. Commissioner*, T.C. Memo. 2012-79, 2012 WL 952871, at *4; *Campfield v. Commissioner*, T.C. Memo. 1996-383, 1996 WL 467816, at *9, *aff'd*, 133 F.3d 906 (2d Cir. 1997) (unpublished table decision). These badges focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash. *See Parks v. Commissioner*, 94 T.C. 654, 664–65 (1990); *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988). The existence of any one badge is not dispositive, but the existence of several badges is persuasive circumstantial evidence of fraud. *Niedringhaus*, 99 T.C. at 211.

Several badges of fraud are evident in this case. Initially, Dr. Gottesman did not file any income tax returns or requests for extensions of time for the tax years at issue. He failed to cooperate with the IRS's examination. He also belatedly submitted income tax returns that understated his income tax liability with the intent to evade tax. Specifically, he (1) underreported Schedule C gross receipts; (2) did not report partnership income or guaranteed payments from SWIM (for 2009 through 2012) or HPC (for 2011); and (3) did not report taxable dividends or interest payments. He failed to maintain adequate records or submit them in connection with the examination. He also used nominees to conceal assets and income from the IRS.

Accordingly, respondent has demonstrated by clear and convincing evidence that Dr. Gottesman had fraudulent intent when he belatedly submitted his income tax returns, understated his income tax, and failed to pay income tax due and owing. Further, Dr. Gottesman has neither argued nor shown that any amount should not be subject to the civil fraud penalty. *See, e.g.*, *Kamal v. Commissioner*, T.C. Memo. 2023-80, at *28. Thus, the Court holds that Dr. Gottesman is liable for the section 6663 civil fraud penalty for each of the tax years at issue.

**[\*11]** IV.  *Motion to Stay*

Finally, with respect to Dr. Gottesman's Motion to Stay, the Court has discretion to grant a stay pending resolution of a related criminal case when justice so requires. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Ironbridge Corp. v. Commissioner*, T.C. Memo. 2012-158, 2012 WL 2015807, at \*2 (first citing *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); and then citing *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980)), *aff'd*, 528 F. App'x 43 (2d Cir. 2013). However, staying a civil case to permit conclusion of a related criminal prosecution is an extraordinary remedy. *Ironbridge Corp. v. Commissioner*, 2012 WL 2015807, at \*2 (citing *Louis Vuitton Malletier S.A. v. Ly USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012)).

Courts exercise judgment to grant a stay by considering a variety of factors. These factors often include "1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay." *Kurd v. Republic of Turkey*, No. 18-cv-1117, 2022 WL 17961245, at \*1 (D.D.C. Dec. 27, 2022) (quoting *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012)); *see also Dresser Indus., Inc.*, 628 F.2d at 1375 ("The Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.").[5] The factors serve only as a "rough guide" for a court as it exercises its discretion. *Sipper*, 869 F. Supp. 2d at 116 (quoting *Luis Vuitton Malletier S.A.*, 676 F.3d at 99). For the reasons set forth herein, we will deny the Motion to Stay.

A.  *Relationship Between Civil and Criminal Actions*

Although respondent's position is that the year at issue in the criminal case (2008) does not overlap with the tax years at issue in this case (2009–12), it appears to the Court that Dr. Gottesman's pending criminal action overlaps with this case. While the tax evasion charge is specifically for tax year 2008, the indictment alleges that from 2009

---

[5] Other factors courts consider include (1) the interest in proceeding expeditiously with this litigation or any particular aspect of it and the potential prejudice of a delay; (2) the burden that any particular aspect of the proceedings may impose; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Keating*, 45 F.3d at 325 (citing *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)); *see also id.* (setting forth similar factors considered in the U.S. Court of Appeals for the Ninth Circuit).

[*12] through 2019, Dr. Gottesman willfully attempted to defeat the payment of income tax due and owing by him to the United States for tax year 2008. The indictment also notes that Dr. Gottesman failed to timely file income tax returns from 2008 through 2013, a period which overlaps with the tax years at issue in this case. That said, the criminal indictment does not mirror the exact tax years or issues before this Court.

Further, both cases proceeding at the same time *could* implicate Dr. Gottesman's Fifth Amendment rights. *See Kurd*, 2022 WL 17961245, at *2. However, Dr. Gottesman may not make a blanket Fifth Amendment privilege claim. *See Petzoldt*, 92 T.C. at 683–84 ("A valid assertion of the privilege against self-incrimination . . . is not a 'substitute for evidence that would assist in meeting a burden of production,' for to adopt such a view 'would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his.'" (quoting *United States v. Rylander*, 460 U.S. 752, 758 (1983))). Rather, he must raise the privilege in response to specific individual questions. *See, e.g.*, *United States v. Bodwell*, 66 F.3d 1000, 1001–02 (9th Cir. 1995) (stating that the only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis); *see also United States v. Johnson*, 577 F.2d 1304, 1311 (5th Cir. 1978) (finding that blanket refusal to provide any financial information is not protected under the Fifth Amendment). Thus, a blanket assertion of Fifth Amendment privilege cannot support a request for an indefinite stay.

We set the Motion to Stay for hearing, in part, to hear further argument from the parties and to weigh these competing issues. However, Dr. Gottesman failed to appear for that hearing. Accordingly, on the basis of the information that is currently before us, we find that this factor is neutral.

B.   *Burden on the Court*

Next, we examine the burden on the court if the stay is granted. A stay pending resolution of a criminal case could streamline discovery and promote judicial economy. *See Kurd*, 2022 WL 17961245, at *2. That is not the case here. We find that Dr. Gottesman's request for a stay is not in the interest of judicial economy. We have determined that the Motion for Summary Judgment should be granted because there is no

**[\*13]** genuine dispute as to any material fact. *See supra Discussion* Parts II and III. Thus, a stay would merely delay resolution of this matter—which can be resolved on the motion papers—and denying the stay promotes the efficient use of judicial resources. In contrast, "granting the motion [to stay] could result in the imposition of a lengthy and indeterminable stay for no reason." *Ironbridge Corp. v. Commissioner*, 2012 WL 2015807, at \*3. Thus, this factor weighs against a stay.

### C. *Hardships or Inequities Faced by the Parties*

We also examine the hardships or inequities faced by the parties. As for respondent, the potential loss of evidence and testimony as time passes creates significant hardships and inequities. *See id.* Moreover, respondent faces increasing difficulty in collecting from Dr. Gottesman as time passes. *See id.*

In contrast, it appears that Dr. Gottesman seeks a stay to avoid appearing in the District of Arizona, where there is an active warrant for his arrest. This Court will not be a handmaiden to such tactics. Moreover, even if Dr. Gottesman invokes the Fifth Amendment, the IRS can prove its case through testimony and other evidence. *See id.* Although Dr. Gottesman may very well have to face criminal charges by proceeding with this action, we find that the interest of the government in proceeding with this civil case outweighs any burden to Dr. Gottesman.

### D. *Duration of the Requested Stay*

In the context of this case, Dr. Gottesman's Motion to Stay essentially seeks an indefinite continuance because of the pending criminal case. Per the Court's Standing Pretrial Order (Doc. 34), any such motion was due no later than Friday, November 15, 2024. The Motion to Stay was filed on November 29, 2024 (Doc. 48). Thus, Dr. Gottesman's Motion to Stay was untimely, and we can deny it for this reason.

Moreover, Dr. Gottesman appears to seek an indefinite stay of this case while he avoids prosecution in the criminal matter. Despite being indicted more than five years ago, Dr. Gottesman has not been arraigned, presumably because he remains outside the United States. Although Dr. Gottesman frames the Motion to Stay as a "temporary stay of all proceedings," his request would almost certainly facilitate an

**[\*14]** indefinite stay while he fails to appear for arraignment in the criminal case.

Dr. Gottesman admits as much. In the Motion to Stay, he states that he fears arrest if he appears in the District of Arizona. Of note, Dr. Gottesman has not represented that he will now or at any time in the near future appear to face criminal charges or work to resolve his criminal case. Thus, it appears that he is abusing this Court's process by seeking an indefinite stay while he avoids prosecution in the criminal case. This factor weighs heavily against Dr. Gottesman.

E.  *Conclusion Regarding Motion to Stay*

For the reasons set forth above, we will deny Dr. Gottesman's Motion to Stay on the merits and because it is untimely. In the alternative, we find that the Motion to Stay is moot because we have granted respondent's Motion for Summary Judgment.

V.  *Conclusion*

On the basis of the foregoing, we will grant respondent's Motion for Summary Judgment, both on its merits and, in the alternative, on the ground that Dr. Gottesman failed to comply with the Court's Order that he respond to the Motion. *See* Rule 121(d). We sustain the Commissioner's deficiency and civil fraud penalty determinations.

In reaching our conclusions, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*